**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Keith Wayne FREDERICK,
Defendant–Appellant.**

**No. 95–10135.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 1995.

Decided March 5, 1996.

Elizabeth M. Overholt, Assistant United States Attorney, Phoenix, Arizona, for plaintiff-appellee.

Bram Jacobson, Assistant Federal Public Defender, Phoenix, Arizona, for defendant-appellant.

\* The Honorable Samuel P. King, United States District Judge for the District of Hawaii, sitting

Before: GOODWIN and REINHARDT, Circuit Judges, and KING, District Judge \*.

REINHARDT, Circuit Judge:

## OVERVIEW

Defendant, Keith Frederick, was charged with three counts of Aggravated Sexual Assault against his stepdaughter, S.F., all arising out of a single incident alleged to have occurred in June of 1992. He was convicted on two counts and sentenced to 188 months in jail. He raises a number of issues on appeal, including prosecutorial vouching, improper comments by the prosecutor about defendant's counsel, and prejudicial testimony by government witnesses suggesting that he had committed similar offenses against others. We reverse because of the cumulative effect of the errors.

## FACTS AND PROCEDURAL HISTORY

Frederick was tried and convicted of molesting his ten-year old step-daughter, S.F., within the confines of an Indian reservation. The government and the defendant agree that the facts set forth in the indictment and at trial derive almost entirely from statements made by the alleged victim, who was 12–years–old at the time she testified in district court. S.F.'s statements at trial, and prior statements to investigating officers, were, understandably, sometimes confused and contradictory.

Sometime before January 1987, Frederick married Tracy F., S.F.'s mother. During 1987, Frederick, Tracy, and S.F. moved from Tucson, Arizona to a trailer on the Pima–Maricopa Indian Reservation near Phoenix and Scottsdale, Arizona. At some unspecified date within the next two years S.F. moved away from her mother and stepfather, Frederick, into the house of her maternal grandmother, Theresa Miguel, in Truxton, Arizona. Tracy and Frederick continued to live together on the Reservation and S.F. visited during summers.

S.F. claims that Frederick molested her in his bed in the presence of two of her sleeping siblings sometime in 1990. ER 13–19. S.F.

by designation.

placed the date by remembering that her mother was away at the hospital giving birth to her sister, K. Although S.F. did not give a precise date at trial, her mother Tracy testified that her daughter K. was born in April. T.R. Dec. 14, 1995 at 154. Although Frederick was not charged with this alleged incident of molestation, the jury heard S.F.'s testimony about it as well as about at least one other uncharged offense. S.F. was permitted to testify that she was molested sometime after June 1993, an incident that allegedly happened one year after the events set forth in the indictment. ER 65.

In June of 1991, Frederick and Tracy legally separated; however, they continued to see each other until their divorce was final in August of 1993. The testimony does not clearly account for Frederick's whereabouts between June 1991 and the time of his divorce from Tracy, but S.F. testified that he was living in her mother's trailer in June 1992, when he allegedly committed the offenses for which he was tried. ER 33–35. According to a stipulation, Frederick was in tribal jail on an unrelated matter for the month of July 1992. T.R. Dec. 15, 1995 at 34.

S.F. went to Bible Camp in Albuquerque, New Mexico from June 13, 1992 until June 17, 1992. ER 33. After camp she returned to her mother's trailer on the reservation. S.F. claims that the "three things" that later became the three counts for which Frederick was indicted and tried happened sometime between June 18, 1992 and July 1, 1992. ER 38–9.

Approximately one year later, S.F. told her cousin, H.L., that Frederick had molested her. ER 42–3. Both S.F.'s aunt, Veronica, who is H.L.'s mother, and S.F.'s grandmother, Theresa Miguel, heard about the alleged molestation. Theresa told the story to a neighbor, Officer Geionety, a police officer. T.R. Dec. 15, 1995 at 184–85. Following an investigation in which Officer Geionety, Tribal Officer Sapcut and FBI Agent Garcia all participated, the grand jury indicted Frederick on three counts of aggravated sexual assault. The crimes were all alleged to have occurred on an Indian reservation. The indictment read:

During the month of June 1992, in the District of Arizona, within the confines of the Salt River Pima–Maricopa Indian Reservation, Indian Country, the defendant KEITH FREDERICK, an Indian, did knowingly engage in and attempt to engage in a sexual act with ... "S.F.," a minor female child who had not attained the age of 12 years, that is[:]

[Count 1] the penetration, however slight, of the genital opening of ... "S.F.," by a finger, with the intent to abuse, humiliate, harass, or degrade ... "S.F.," or arouse or gratify the sexual desire of KEITH FREDERICK, [i]n violation of Title 18, United States Code, Sections 2241(c), 2245(2)(C) and 1153(a) ];

[Count 2] contact between the penis and the vulva, with ... "S.F.," a minor female child who had not attained the age of 12 years, [i]n violation of Title 18, United States Code, Sections 2241(c), 2245(2)(A) and 1153(a) ];

[Count 3] contact between the mouth and the penis, with ... "S.F.," a minor female child who had not attained the age of 12 years. In violation of Title 18, United States Code, Sections 2241(c), 2245(2)(B) and 1153(a).

ER 2–4.

After a two-day trial, the jury returned verdicts of guilty on counts one and three of the indictment, and not guilty on count two. CR 49. The district court denied a number of motions for acquittal and sentenced Frederick to 188 months on each count, to be served concurrently, followed by 60 months supervised release, restitution of $86.34, and $1,000 fine. ER 161. Frederick filed his notice of appeal the same day. ER 165.

## ANALYSIS

### Sufficiency of the Evidence

■ Frederick contends that the district court erred by denying his motion for a judgment of acquittal because the evidence introduced at trial was insufficient to support a verdict of guilty beyond a reasonable doubt. Specifically, Frederick argues that because the prosecution's case relied entirely on the "self-contradictory and confused" testimony of the 12-year-old S.F., it cannot

support the jury verdict. In addressing Frederick's contention, we must determine whether the evidence, viewed in the light most favorable to the Government, would permit any rational trier of fact to conclude that the defendant was guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *United States v. Lim,* 984 F.2d 331, 337 (9th Cir.), *cert. denied,* 508 U.S. 965, 113 S.Ct. 2944, 124 L.Ed.2d 692 (1993).

▮ Frederick relies on *United States v. Barker,* 967 F.2d 1275 (9th Cir.1991), to support his claim that a single witness' self-contradictory and confused testimony is insufficient to support a conviction.[1] Barker was accused of submitting false claims for wages and overhead costs against the United States while working under government contract. The government's only witness concerning the counts on appeal had no first-hand knowledge about whether Barker worked on the days he claimed. Instead, he based his conclusions on documents that the witness had reviewed. *Id.* at 1277. During cross-examination the witness undercut his earlier testimony by stating, "I am not saying they did not work on those days. I am— the daily journals do not support the hours requested." *Id.* The *Barker* Court concluded:

> The jury, the judge, and we on appeal are in exactly the same situation as [the government's witness]. We do not and cannot know whether the Barkers worked on Sunday, May 25, 1986. A self-contradictory report, contradicted on the vital point by all the other contemporary reports, proves nothing.

*Id.*

There is no similarity between this case and *Barker.* In *Barker* the government's witness conceded that he had no personal knowledge of the commission of the charged offense. S.F. testified that she personally experienced Frederick's crimes.

On appeal, Frederick identifies portions of S.F.'s testimony in which she either contradicts herself or admits uncertainty about what happened and where and when it happened. Blue brief, p. 12–4. At trial, S.F. did contradict herself at times and admitted uncertainty. Some parts of her testimony consist of her simply responding "yes" or "no" to "leading" questions. At other times, however, she gave fairly precise and clear testimony about specific incidents, including those charged in the indictment. T.R. Dec. 14, 1994 at 84–89. The critical point on appeal is whether the evidence was sufficient to support a finding that the offenses took place on an Indian reservation, and thus whether federal jurisdiction existed. Although the government's evidence was certainly not overwhelming in general, and although the evidence regarding the location of the alleged crimes was sketchy, it was not so inconclusive as to require the panel to overturn the jury verdict on the ground of insufficiency. *See generally United States v. Hodges,* 770 F.2d 1475, 1478 (9th Cir.1985) ("[Q]uestions of credibility are for the jury to decide and are generally immune from appellate review."). The closeness of the case is relevant, however, to our subsequent determination regarding the prejudicial effect of the errors that did occur.

Frederick also specifically argues that his conviction on Count One should be reversed because S.F. "omitted any mention that she was digitally penetrated." Blue brief, p. 13. While S.F. failed to mention the digital penetration by name, she answered "yes" to the following question:

> Is there a time that he did three things to you, three different things, that he touched you, and put his private place inside of yours and made you put your mouth on his private?

---

1. Frederick also cites *United States v. Payseur,* 501 F.2d 966 (9th Cir.1974); however, that case does not help him. Payseur challenged a jury instruction permitting a conviction on the basis of a single prosecution witness. In affirming his conviction, the court found that Payseur had failed to raise an objection before the trial court

and that the instruction as given did not constitute plain error. This court nevertheless noted its disapproval of the challenged instruction and included a preferred version of the instruction in its opinion. *Id.* at 972. Frederick requested and received the exact instruction approved in *Payseur.*

ER 38. The government claims that the touching clause referred to the charged digital penetration and in the context of all the testimony that characterization is plausible. Certainly, a reasonable juror could so have construed it.

*Inadmissible Testimony*

 Frederick contends that the district court erred when it denied his motion for a mistrial after two government witnesses had made statements during their testimony that suggested that Frederick had engaged in sexual misconduct with children other than S.F. The standard of review for the denial of a mistrial is abuse of discretion. *United States v. Charmley*, 764 F.2d 675, 677 (9th Cir.1985). The burden is on the defendant to show that the district court abused its discretion in denying the motions. *Tisnado v. United States*, 547 F.2d 452, 460 (9th Cir. 1976).

During discovery the government notified the court that it intended to produce evidence of Frederick's prior sexual misconduct with other children. C.R. 32R The district court granted Frederick's motion to preclude such testimony under Rule 404(b) of the Federal Rules of Evidence. ER 6; R.T. Dec. 14, 1995 at 23. Frederick contends that despite the court's ruling, the two law enforcement witnesses who testified nevertheless "both used their opportunity on the witness stand to introduce the prohibited topic." Blue brief, p. 16. He objected to the officers' misstatements and twice moved for a mistrial based on their prejudicial effect. ER 91–4, 101–3. The district court denied both motions. ER 94, 103.[2]

Frederick contends that the jury heard two inadmissible statements that prejudiced him. First, he points to the following exchange in open court between the government and F.B.I. Agent Garcia:

Government: And as a result of [receiving a notice of allegation from Truxton County] what did you do?

Garcia: "I contacted Detective Sapcut from the Salt River Reservation, as she knows where some of the **victims** that were named in the allegation were."

Government: People—

Garcia: —some of those **victims,** yes.

ER 92 (emphasis added). Frederick argues that Agent Garcia's reference to victims in the plural clearly violated the district court order to exclude testimony about the alleged other victims and unfairly prejudiced him.

Frederick's second motion for a mistrial was in response to a statement made by Tribal Officer Sapcut. Sapcut testified that she believed she first heard about a need to investigate Keith Frederick in January 1992. ER 101. This date was well before the molestation of S.F. charged in the indictment, which was alleged to have occurred in June, 1992. Frederick claims that the jury would have had to conclude that Sapcut had heard about him in relation to another molestation.

 In evaluating whether inadmissible testimony heard by the jury was prejudicial, we must ordinarily consider a number of factors, including the nature of the information that the jury heard, *see United States v. Bland*, 908 F.2d 471, 473 (9th Cir.1990), *cert. denied*, 506 U.S. 858, 113 S.Ct. 170, 121 L.Ed.2d 117 (1992), what remedial steps, if any, were taken, *see Charmley*, 764 F.2d at 677, and the weight of the evidence against the defendant. *See United States v. Bagley*, 772 F.2d 482, 488 (9th Cir.1985) (considering the "overwhelming evidence of guilt" in determining that error was not prejudicial), *cert. denied*, 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986).

 We have stated that "evidence of prior offenses is likely to prejudice a defendant even where the defendant has the opportunity to rebut the evidence and take other ameliorative steps." *Dickson v. Sullivan*, 849 F.2d 403, 407 (9th Cir.1988). In *United States v. Bland*, 908 F.2d at 473, we held that the district court had abused its discretion by

---

2. The government contends that the standard of review for the second comment, the one by Agent Sapcut, is plain error because the defendant did not object or move for a mistrial as to this comment. The government is mistaken. The

defendant renewed his mistrial motion on the ground that Agent Sapcut's statement in combination with Agent Garcia's, made the previous day, was prejudicial. ER at 103.

informing the jury of the existence of an arrest warrant for the defendant and that the warrant was issued for the molestation, torture and murder of a seven-year old girl, and found the error reversible.

There can be no doubt of the severe prejudicial effect of a jury's improperly receiving testimony that the defendant, committed, or is suspected of having committed, other crimes similar to the one with which he is charged. However, here the testimony was not as explicit as in the cases cited above. Although Agent Garcia used the word "victims," she did not directly state that Frederick had been accused of molesting other children. For the statements to be clearly prejudicial, a juror would have had to infer that Garcia meant that Frederick had been accused of other improprieties and that they were similar to those at issue in the trial. The damage that might have resulted from Agent Sapcut's testimony is even less direct. After Agent Sapcut made the potentially damaging statement, she was questioned about whether she was "sure about that date." She then asked if she could check her notes. At that point, the district court directed the government's inquiry away from the potentially prejudicial subject. The trial was filled with confusion about dates, and amidst all of the contradictory testimony regarding the timing of events, the implication of Sapcut's statement could well have been lost. Furthermore, there had been proper testimony at trial as to earlier episodes of molestation by Frederick against S.F. The jury might have assumed that the Agent Sapcut had been informed about these incidents and that her involvement in January was a result of information she received about incidents involving S.F. that were not the subject of the indictment. Even though the two witnesses' testimony together made it more likely that the jury inferred that there were accusations of molestation against Frederick by other children, the testimony was not nearly as explicit and therefore not nearly as harmful as the information that the jury heard in *Bland*.

Given these circumstances, we conclude that the district court did not abuse its discretion when it denied the motions for a mistrial. At the time the motions were made, it was not sufficiently clear that the improper testimony would meet the test for reversible error. Thus, there was insufficient reason to terminate the proceedings precipitously. However, we are also required to determine whether, in light of all the evidence ultimately adduced, the errors met the harmless error test. That question is different from the mistrial question. The complete record shows that the evidence was close and that the prejudice that might result for the receipt of the inadmissible information was potentially substantial. In light of our ultimate decision, however, we need not decide whether the fact that the jury heard the evidence would, standing alone, require reversal.

*The Admission of Previous Out-of-Court Statements and Vouching*

■ On appeal Frederick contends that the prosecutor continually attempted to introduce S.F.'s inadmissible prior consistent statements and that this constituted vouching and the introduction of hearsay testimony that was not admissible under Federal Rule of Evidence 801(d). In the first instance, the prosecutor tried to elicit from S.F. herself, testimony of her previous consistent statements. Defendant objected at trial, but he did so on a different ground, stating that the prosecutor's attempts to have S.F. refer to a police report of her interview with Officer Geionety were improper because there was no question in front of the witness. The substance of the actual objection at trial is not crystal clear; however, we interpret it to have been that showing the witness a document to refresh her recollection was improper because there was no question before the witness and therefore no indication that her memory needed refreshing.

There is little merit to the objection as made. We cannot say that the trial court abused its discretion in allowing the witness to "refresh her recollection" for two reasons. First, S.F.'s testimony was halting, and the trial court may properly have determined under the circumstances that she needed to refresh her recollection even though she had not explicitly stated that she could not re-

member. In addition, "it is not essential that the prosecutor first establish that the witness has exhausted [her] present recollection before [the prosecutor] can refresh [the witness'] memory." *United States v. Mkhsian,* 5 F.3d 1306, 1313 (9th Cir.1993).

■ The argument defendant makes on appeal, that the prosecutor was improperly introducing hearsay testimony that was not admissible under Federal Rule of Evidence 801(d) and *Tome v. United States,* — U.S. ——, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995), has more merit. Under Federal Rule of Evidence 801(d)(1)(B), prior consistent statements are admissible only if offered to rebut a charge of recent fabrication or improper influence or motive. They are not admissible "to counter all forms of impeachment or to bolster the witness merely because she has been discredited." *Tome v. United States,* — U.S. ——, ——, 115 S.Ct. 696, 701, 130 L.Ed.2d 574 (1995) (reversing defendant's conviction for aggravated sexual assault against his daughter on an Indian reservation and holding that child's prior consistent statements were inadmissible because they were made after her alleged motivation to lie about molestation). In interpreting Rule 801(d)(1)(B) in *Tome,* the Court also added a "temporal" requirement, holding that prior consistent statements made after the date of the alleged motivation to lie are inadmissible. *Id.* at ——, 115 S.Ct. at 705. Here, there was no proper justification for introducing the prior consistent statements, and those statements were all made after S.F.'s relatives had reported the alleged offenses to the police who had commenced a formal investigation.

■ During the trial the prosecutor first asked S.F. to look at a report of notes taken by Officer Geionety. The prosecutor then immediately asked S.F., "What did you tell Officer Geionety that [Frederick] said?" ER 84–5. S.F. stated that she had told Officer Geionety that the defendant had threatened to hurt her mother if she told anyone about the alleged incidents. Defendant is correct that S.F.'s testimony about what she had told

Officer Geionety in an out-of-court interview is hearsay that is not admissible under the exception set forth in Federal Rule of Evidence 801(d)(1)(B).

In determining whether the error is prejudicial, we consider the evidence that was mistakenly admitted in the context of the trial as a whole.[3] As we stated earlier, S.F.'s testimony was the foundation of the government's case and the defendant's lawyer had pointed out numerous instances of contradictions and memory lapses during cross-examination; the case was close, especially on the question of whether the events alleged occurred on an Indian Reservation. In this instance, however, the testimony introduced over defendant's objections did not constitute evidence concerning the actual criminal acts alleged in the indictment. Thus, standing alone, the error would not be prejudicial under a plain error test.

Subsequently, however, during her questioning of F.B.I. Agent Garcia, the prosecutor, over defendant's objection, again attempted to elicit testimony concerning S.F.'s prior consistent statements. The following exchange occurred on direct examination:

Prosecutor: And what event did [S.F.] tell you about?

Defense Attorney: Excuse me, your honor—

Agent Garcia: That event—

Defense Attorney: —hearsay.

The Court: Sustained.

Prosecutor: And was she able to recall an event in the summer of '92 that was close to the time of the incident where three different things happened to her?

Defense Attorney: Excuse me.

Agent Garcia: Yes, she was.

Defense Attorney: Excuse me, Your Honor. The question is leading and it assumes facts not in evidence.

The Court: Well, that answer's in. It may stand.

Prosecutor: And what events was she relating that happened in the summer of

---

**3.** We will assume for the purposes of this opinion that plain error review is applicable because the "right" objection was not made, but we do not decide that question because it can be argued that *Tome,* which was issued after the trial, clarified the law.

1992 that was close to when she could remember three things happening?

Defense Attorney: Excuse me, Your Honor, hearsay.

The Court: I'll sustain the objection to the form of the question only at this stage.

. . . . .

Prosecutor: What other events was she able to remember?

Defense Attorney: Hearsay, Your Honor.

The Court: Sustained.

. . . . .

Prosecutor: Having heard what [S.F.] testified to today in court, did you observe any differences in any significant way between what she had told you on those two previous occasions when you interviewed her?

Defense Attorney: Your Honor, I object to the form of the question. It encompasses things that are beyond any possible experience.

The Court: Sustained as to form.

Prosecutor: Did S.F. testify consistently with what she told you in the past when you interviewed her?

Agent Garcia: Yes, she did.

Defense Attorney: I—Your Honor, I object to the witness' answer and to the question. It calls for a conclusion.

The Court: Well, I will sustain the objection, **strike the answer.** When counsel stands up, please let him make his objection before you respond to the question.

ER 97–99.

Even though the district court ruled that Agent Garcia's testimony concerning her earlier out-of-court interview with S.F. was inadmissible, the prosecutor subsequently argued to the jury that the law enforcement officers had said during the trial that S.F.'s testimony was consistent with her earlier out-of-court statements. Agent Garcia was the only officer who was even asked about this point. Frederick contends that under the circumstances the prosecutor's statement constitutes improper prosecutorial vouching.

■ The Ninth Circuit rule on vouching is clearly expressed in *United States v. Roberts,*

618 F.2d 530 (9th Cir.1980), *cert. denied,* 452 U.S. 942, 101 S.Ct. 3088, 69 L.Ed.2d 957 (1981). "It is improper for the prosecution to vouch for the credibility of a government witness." *Id.* at 533. We said:

> Vouching may occur in two ways: the prosecution may place the prestige of the government behind the witness or may indicate that information not presented to the jury supports the witness's testimony. The first type of vouching involves personal assurances of a witness's veracity and is not at issue here.
>
> The second type of vouching involves prosecutorial remarks that bolster a witness's credibility by reference to matters outside the record. It may occur more subtly than personal vouching, and is also more susceptible to abuse. This court has declared that such prosecutorial remarks may be fatal if:
>
> ... the remarks, fairly construed, were based on the District Attorney's personal knowledge apart from the evidence in the case and that the jury might have so understood them. *Id.* at 533–34 (citations omitted).

■ As in *Roberts,* the first type of vouching is not at issue here. Frederick argues that the prosecutor vouched for S.F.'s credibility in closing argument by referring to an inadmissible piece of testimony by Agent Garcia that had been stricken from the record. The prosecutor stated:

> The officers said they were not allowed to testify to what she said at their prior interviews, but they were allowed to say that she was consistent with her testimony in court and that she was consistent between the different interviews.

ER 153. In fact, they were not allowed to say that her testimony was consistent in any respect. Frederick is correct that this statement was an improper attempt to bolster a witness's credibility by citing to earlier testimony by Agent Garcia that referred to a prior consistent statement by S.F., even though that testimony had been stricken from the record.

Analysis of the harm caused by vouching depends in part on the closeness of the case.

*U.S. v. Kerr*, 981 F.2d 1050, 1054 (9th Cir. 1992). As we stated above, the outcome of Frederick's case was dependent almost entirely on the testimony of S.F., which was at times unclear and inconsistent. The prosecutor's impermissible remarks could have helped to establish S.F.'s credibility in the minds of the jury, thus affecting their verdict. We have often found that vouching is an error that is potentially prejudicial. In *Roberts* we stated, "[v]ouching for a government witness in closing argument has often been held to be plain error, reviewable even though no objection was raised." *Roberts*, 618 F.2d at 534. *See also Kerr*, 981 F.2d at 1054 ("[W]e find that the repeated instances of prosecutorial vouching affected the jury's verdict.... [and w]e reverse for plain error."); *United States v. Smith*, 962 F.2d 923, 933 (9th Cir.1992) (reversing under plain error for prosecutorial vouching).[4] Here we do not have repeated instances of prosecutorial vouching, but we do have the improper admission of the witness' statement that S.F. told the same story to the law enforcement officer investigating the case *and* the prosecutor's erroneous representation to the jury that the officers testified that S.F. had done so. While the latter error is particularly serious, again we need not decide whether these errors standing alone would require a reversal of the convictions under the plain error standard, which we employ when reversing on the ground of unobjected-to prosecutorial vouching.

*Prosecutorial Comments About Defense Counsel*

Frederick contends that he was further prejudiced by the prosecutor's three related, impermissible attacks on the defense attorney during closing argument. "When prosecutorial conduct is called in question, the issue is whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly." *United States v. Simtob*, 901 F.2d 799, 806 (9th Cir.1990) (citing *United States v. Young*, 470

U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985)).

Frederick asserts that he was prejudiced by the following series of comments made about his attorney during the prosecutor's summation:

> Finally, [S.F.], on cross-examination, there is no doubt that it is a defense attorney's job to do his best to cross-examine thoroughly the witnesses presented by the Government for the benefit of his client. And you can have admiration for Mr. Jacobson [the defense attorney] because he is a skilled practitioner of that art.

ER 157. This comment precipitated the following exchange:

> Mr. Jacobson: Excuse me, Your Honor, I object, comments about me are not appropriate.
>
> The Court: Sustained.
>
> Prosecutor: Sorry. I'm trying to compliment him that he did a very good job of confusing her on the stand.
>
> Mr. Jacobson: Excuse me, Your Honor, I object, comments about me are not appropriate.
>
> The Court: Proceed with your argument, that's enough.

Immediately following this admonition, and without any intervening comment or question, the prosecutor told the jury:

> It is also not his job to ask you to look at all of the evidence. And he is asking you to look at little bits and pieces. The Government and the Judge will be asking you to consider all of the evidence in making your decision.

*Id.* It is the final comment that concerns us here.

In *Bruno v. Rushen*, 721 F.2d 1193 (9th Cir.1983), *cert. denied*, 469 U.S. 920, 105 S.Ct. 302, 83 L.Ed.2d 236 (1984), we expressed our disapproval of prosecutors' attacks on defense attorneys. "Neither is it accurate to state that defense counsel, in general, act in underhanded and unethical ways, and absent specific evidence in the

---

**4.** We may also consider "how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness, [and] any inference that

the court is monitoring the witness's veracity." *United States v. Necoechea*, 986 F.2d 1273, 1278 (9th Cir.1993). Neither of these factors is particularly at issue in this case.

record, no particular defense counsel can be maligned." *Id.* at 1195. The prosecution's first two statements about Frederick's counsel are not nearly as offensive as those in *Bruno*. There the prosecutor tried to destroy the credibility of the defendant by implying that defense counsel fabricated the defendant's story and instructed him to repeat it on the stand. *Id.* at 1194. The prosecutor also implied that seeking representation indicated the defendant's guilt. Here, unlike in *Bruno,* the government's initial statements about defense counsel were not made in an effort to destroy the defendant's credibility. Nevertheless, the comment in which the prosecutor said that she sought to compliment the defense lawyer on "confusing" the witness would seem to imply that his methods were somewhat underhanded and designed to prevent the truth from coming out. The prosecutor's comments were improper, although at the same time they served to refocus the jury's attention on the fact that S.F.'s testimony had on occasion been confusing and contradictory.[5] We do not view the improper comments as crossing the line sufficiently to warrant action of any kind by this court.

▬ The prosecutor's final comment about the defendant's lawyer, made immediately after the court had sustained two other objections on the ground that her comments were inappropriate, did however constitute a serious misstep.[6] In her final comment the prosecutor implied that 1) the government and the court were allied, 2) they were allied against the defense, and 3) the government and the court wanted the jury to seek the truth by considering all the evidence, in contrast to the defense attorney, who was asking the jury not to see the truth.

In *United States v. Smith,* 962 F.2d 923 (9th Cir.1992), this court reversed in somewhat similar circumstances.[7] There, as here, the prosecutor made comments the purpose of which was to "establish[ ] his own veracity and credibility as a representative of the government." *Id.* at 933–34 ("[T]he government's job is to ... ferret through all the smoke screens and lead you to the truth."). The prosecutor also linked himself to the court by stating "if I did anything wrong in this trial I wouldn't be here. The court wouldn't allow that to happen." *Id.*

There are distinctions between the cases. On the one hand, in *Smith* the prosecutor, by linking himself to the court, was not only bolstering the credibility of the government, but was also implying that the court was satisfied with the testimony of one of the government's witnesses who had previously pled guilty before the court. Here, the prosecutor was not trying to bolster her witness's credibility with her comment. On the other hand, the prosecutor here was not only allying herself with the court, she was also arguing that both the government and the court had one view of the jury's responsibilities and the defendant's lawyer another. Even the prosecutor in *Smith* did not go quite so far as to directly put the defense on a "different team" from the government and the judge. The potential effect on the jury of the prosecutor's implication that the government and the court are allied in opposition to the defendant and his lawyer is serious indeed.[8] The error is all the more troubling

---

5. We cannot accept the government's contention that references to defense counsel were made as compliments about his skill at cross-examination. It is clear even from a cold record that the statement was not laudatory and the "compliment" a back-handed one at best.

6. Because this statement was intended to bolster the credibility of the prosecutor and undercut that of the defendant, it might be considered akin to vouching in addition to constituting improper comment about opposing counsel. For the purposes of this opinion, the name we ascribe to the error is not important; what matters is our determination that it constituted a serious violation of the defendant's rights.

7. In *Smith,* this court reviewed for plain error because the defendant did not object to the prosecutor's closing argument; the court nevertheless found the error so serious as to warrant reversal. Here, we review under a less strict standard, because defense counsel repeatedly objected to the prosecutor's comments.

8. We wish to state explicitly that although we find a number of serious errors in this case, including some of the comments by the prosecutor, our review of the entire record reveals no evidence of any bad faith on the prosecutor's part. We believe that the errors were simply mistakes made in the heat of a trial involving a very emotional subject. The prosecutor argued

because the court failed to strike the prosecutor's comments or instruct the jury to disregard them even though it did sustain the defendant's objections.

*Cumulative Error*

■ In some cases, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant. *See United States v. Green,* 648 F.2d 587 (9th Cir.1981). Where, as here, there are a number of errors at trial, "a balkanized, issue-by-issue harmless error review" is far less effective than analyzing the overall effect of all the errors in the context of the evidence introduced at trial against the defendant. *United States v. Wallace,* 848 F.2d 1464, 1476 (9th Cir.1988). In those cases where the government's case is weak, a defendant is more likely to be prejudiced by the effect of cumulative errors. *United States v. Berry,* 627 F.2d 193 (9th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981). "This is simply the logical corollary of the harmless error doctrine which requires us to affirm a conviction if there is overwhelming evidence of guilt." *Id.* at 201; *see also United States v. Hibler,* 463 F.2d 455 (9th Cir.1972).

■ We consider the cumulative effect of the three principal errors in this case, 1) the improper comments by the prosecutor about the defendant's lawyer, particularly the comment designed to link the prosecution to the court in opposition to the defense; 2) the prosecutor's erroneous representation during closing argument that the government agents had testified that S.F.'s testimony at trial was consistent with her statements during earlier out-of-court interviews, coupled with S.F.'s improper testimony about prior consistent statements; and 3) the testimony by the two government witnesses suggesting the possibility of accusations by other children against Frederick.

the case on appeal in a fair and impartial manner, and we fully credit her representation that while she made mistakes, they were not intentional.

9. Frederick contends that there are other grounds for reversal including improper burden

Given the inconsistency and contradictions in the testimony of the only direct witness, understandable though that may be, we must conclude that the evidence against the defendant was not overwhelming and that the case was a close one. In fact, the evidence concerning whether the events took place on an Indian Reservation, a finding which is essential to our jurisdiction, was particularly uncertain. We therefore conclude that, under the facts of this case, the cumulative effect of the errors was prejudicial.[9] Accordingly, the matter is

REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

shifting by the prosecutor and constructive amendment of the indictment in violation of the Fifth and Sixth Amendments. We need not reach those issues because we reverse on the ground set forth in this opinion.