**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

APR 27 2016

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff - Appellee,<br><br>v.<br><br>GODWIN ONYEABOR,<br><br>    Defendant - Appellant. | No. 13-50431<br><br>D.C. No. 2:12-cr-00905-R-2<br><br><br>MEMORANDUM[*] |
| UNITED STATES OF AMERICA,<br><br>    Plaintiff - Appellee,<br><br>v.<br><br>DR. SRI J. WIJEGUNARATNE, AKA Dr. J.,<br><br>    Defendant - Appellant. | No. 13-50436<br><br>D.C. No. 2:12-cr-00905-R-3 |
| UNITED STATES OF AMERICA,<br><br>    Plaintiff - Appellee, | No. 13-50483<br><br>D.C. No. 2:12-cr-00905-R-4 |

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

v.

HEIDI MORISHITA,

        Defendant - Appellant.

UNITED STATES OF AMERICA,        No. 14-50081

        Plaintiff - Appellee,        D.C. No. 2:12-cr-00905-R-4

v.

HEIDI MORISHITA,

        Defendant - Appellant.

UNITED STATES OF AMERICA,        No. 14-50082

        Plaintiff - Appellee,        D.C. No. 2:12-cr-00905-R-2

v.

GODWIN ONYEABOR,

        Defendant - Appellant.

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted February 3, 2016
Pasadena, California

Before: PREGERSON, WARDLAW, and HURWITZ, Circuit Judges.

Following a seven-day trial, a jury found Godwin Onyeabor, Sri Wijegunaratne, and Heidi Morishita (collectively, "Appellants") guilty of federal crimes involving Medicare fraud and kickbacks. On appeal, Appellants contend that the district court unduly and excessively intervened in the proceedings, so as to render the trial fundamentally unfair, and should have granted Appellants' numerous motions for mistrial or severance.[1] Appellants have been released on bond pending appeal.[2] We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

From 2006 through 2012, Fendih Medical Supply Inc. ("Fendih") supplied power wheelchairs to Medicare beneficiaries and received reimbursement from the Center for Medicare & Medicaid Services ("CMS"). Fendih's chief executive officer was Victoria Onyeabor ("Victoria"), Onyeabor's spouse. Onyeabor was also employed by the company, though the nature of his role was in dispute. Federal investigators concluded that Fendih was defrauding CMS by supplying power wheelchairs to people who did not need them, and that Fendih illegally gave

---

[1]   Appellants also challenged their convictions and sentences on a host of other grounds, which we need not reach.

[2]   The district court ordered Morishita's release on bond pending appeal. Although the district court denied Onyeabor's and Wijegunaratne's requests for similar relief, two different two-judge panels of our court ordered their release on bond pending appeal.

doctors, including Wijegunaratne, and promoters, including Morishita, cash kickbacks in exchange for prescriptions. Investigators also concluded that Wijegunaratne knowingly wrote medically unnecessary power wheelchair prescriptions.

After agents executed a search warrant on Fendih's business, a grand jury indicted Appellants and Victoria. Victoria pleaded guilty, and the government proceeded to trial against Appellants. Onyeabor and Wijegunaratne were convicted of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, and several substantive counts of health care fraud in violation of 18 U.S.C. § 1347. All three defendants were convicted of conspiracy to pay and receive kickbacks in violation of 18 U.S.C. § 371 and 42 U.S.C. § 1320a-7b(1)(A) & (2)(A).

1. Appellants contend that the district court judge so excessively intervened in the trial as to render fair judgment impossible. After a thorough review of the record, we agree. We will reverse a trial court for its undue participation in the proceedings only "if the record . . . leaves [us] with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality." *United States v. Mostella*, 802 F.2d 358, 361 (9th Cir. 1986) (quoting *Shad v. Dean Witter Reynolds, Inc.*, 799 F.2d 525, 531 (9th Cir.

4

1986)) (internal quotation marks omitted). The moving party must show that "the conduct measured by the facts of the case presented together with the result of the trial[] was clearly prejudicial to the rights of the party," which is assessed "in light of the evidence of guilt." *United States v. Scott*, 642 F.3d 791, 799 (9th Cir. 2011) (per curiam) (citation omitted). We review for an abuse of discretion a district court's denial of a motion for mistrial brought on the basis of excessive judicial intervention. *Shad*, 799 F.2d at 531.

Considered collectively, a number of the court's remarks devastated the defense, projected an appearance of hostility to the defense, and went far beyond the court's supervisory role.[3] Most of these were addressed to Wijegunaratne's counsel, Victor Sherman. The court admonished Sherman 39 times in the presence of the jury, often at crucial moments and for innocuous conduct. The court admonished the government only 4 times. The following remarks are illustrative, though by no means exhaustive:

---

[3] We reject the government's argument that the district court judge merely engaged in "ordinary efforts at courtroom administration," which, even if "stern and short-tempered," are "immune" to a partiality challenge under *Liteky v. United States*, 510 U.S. 540, 556 (1994). Assuming that *Liteky*, a statutory disqualification case arising under 28 U.S.C. § 455(a), has any bearing on the showing necessary to require a mistrial, its standard is satisfied. The judge's remarks "reveal[ed] such a high degree of . . . antagonism as to make fair judgment impossible." 510 U.S. at 555.

MR. SHERMAN:  She testified about the visit.  I'm going to ask her about the client [sic] with my client.

THE COURT: Please.  Come upon [sic], Mr. Sherman, you know better than that.  You know very much better than that.

MR. SHERMAN: I can't ask her –

THE COURT: Don't try to poison this jury.  And that's what you're trying to do.

MR. SHERMAN: No.  I'm trying to do my job.

THE COURT: No.  No, you're not.  You [sic] conduct is not doing your job.


THE CLERK:  All rise.

[THE COURT:]  Mr. Sherman, you've gotten a lot of hearsay evidence that is not admissible.

(Recess taken)

THE COURT: Well, just a moment.  Before—I want to clear the record, Mr. Sherman.  I was not doing anything for the Government.  What I was doing is I was trying to teach my law clerks about trial and evidence.  All right.


MR. SHERMAN:  Last question, Your Honor.

THE COURT:  Thank God. [Followed by an admonition.]

Our complete review of the record leaves us with an abiding impression that the court projected an appearance of bias against Appellants and in favor of the government.  *Mostella*, 802 F.2d at 361.

6

2.     Further, throughout trial, the district court made numerous erroneous rulings, which one-sidedly accrued to the benefit of the government and the detriment of Appellants.[4]  We provide two illustrative examples rather than an exhaustive list.

First, the court prevented Sherman from effectively cross-examining Margaret Perez, a key government witness, and foreclosed legitimate avenues of impeachment without explanation.  *See United States v. Hibler*, 463 F.2d 455, 462 (9th Cir. 1972).  Second, the court prevented Wijegunaratne from presenting medical records or testimony in support of a defense that he prescribed power wheelchairs only when they were medically necessary.  The government conceded that the records showed medical necessity on their face, and informed the judge that it did not object to the defense arguing to the jury that the patient files on their face supported a finding of medical necessity, but the district court nevertheless precluded the defense from doing so.  Thus, the jury was never made aware of this evidence.[5]  These rulings were abuses of the court's discretion.

Although these and other erroneous rulings might not by themselves provide sufficient bases on which to reverse, when considered cumulatively with the

---

[4]     We note too that the court sustained almost all of the government's evidentiary objections, versus about one third of Appellants' objections.

[5]     In its closing argument, which was not evidence, the government did concede that Wijegunaratne's prescriptions "[o]f course" looked legitimate, though it argued that facial legitimacy was necessary to perpetuate the fraud.

district court's excessive intervention, they heightened the prejudicial effect on the jury. *See United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996).

3.     The government concedes that the district court judge made "occasionally intemperate comments directed toward Wijegunaratne's counsel," but it argues that these did not rise to the level of reversible error.  The government relies principally upon *United States v. Scott*, in which the same district judge made certain "comments and interventions [that] were inconsistent with standards of judicial decorum," but where our court declined to overturn a conviction on this basis. *Scott*, 642 F.3d at 799.

Scott* is inapposite.  In that case, most of the court's injudicious comments were pursuant to its supervisory role, and the evidence against the defendant was overwhelming.  642 F.3d at 799.  Here, by contrast, the court far exceeded the appropriate bounds of its role, and the evidence against Appellants, though legally sufficient to convict, was not overwhelming.  Moreover, each of the defendants allegedly played a minor role in the conspiracy; Victoria, who masterminded and most profited from the conspiracy, had pleaded guilty.  The jury fairly could have concluded that Onyeabor did not occupy a position within Fendih in which he participated in or knew of its misdeeds; that Wijegunaratne, a medical doctor, believed that the power wheelchairs were medically necessary for the patients for

8

whom he prescribed them; and that Wijegunaratne and Morishita lacked the necessary intent to participate in an illegal kickback scheme. Therefore, the prejudicial effect of the court's improper comments and the other trial errors may well have influenced the verdict. Although *Scott* assigned great weight to the curative instructions given by the district court, 642 F.3d at 800, we have long recognized that such instructions cannot ameliorate pervasive and prejudicial judicial interventions of the kind that occurred here. *See, e.g.*, *United States v. Morgan*, 376 F.3d 1002, 1008 n.5 (9th Cir. 2004).

4.     We likewise find unpersuasive the government's argument that any appearance of partiality bore only on the jury's perception of Wijegunaratne's counsel, and not on any Appellant. The district court's conduct was "so virulent here as to result in material harm to [Appellants'] defense." *United States v. Burt*, 765 F.2d 1364, 1368 (9th Cir. 1985). Given the manner in which the joint trial of Appellants proceeded, this harm was not limited to Wijegunaratne, and necessarily carried over to his co-defendants. *See Mostella*, 802 F.2d at 361.

5.     The reassignment of a case to a different district court judge following remand is reserved for "rare and extraordinary circumstances." *United States v. Kowalczyk*, 805 F.3d 847, 861 (9th Cir. 2015) (citation omitted). We consider:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* (citation omitted). "The first two of these factors are of equal importance, and a finding of one of them would support a remand to a different judge." *United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 780 (9th Cir. 1986). Reassignment is necessary to preserve the appearance of justice. We instruct the Clerk of Court for the Central District of California to reassign this case to a different district court judge upon remand.

**REVERSED; REMANDED WITH INSTRUCTIONS.**