**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 1 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-10022 |
| Plaintiff-Appellee, | D.C. No. 4:16-cr-01057-JGZ-LCK-1 |
| v. | |
| MARIA MARGARITA VALDEZ-ARAIZA, AKA Maria Margarita Valdez, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Jennifer G. Zipps, District Judge, Presiding

Argued and Submitted June 14, 2019
San Francisco, California

Before: SCHROEDER and M. SMITH, Circuit Judges, and RAKOFF,** District Judge.

Maria Margarita Valdez-Araiza appeals her conviction for knowingly

making a false statement in a passport application, in violation of 18 U.S.C.

§ 1542. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

** The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

Valdez applied for a U.S. passport under the name "Maria Margarita Valdez," with a date of birth in 1956 and a place of birth in Nogales, Arizona. In signing the application, Valdez "declare[d] under penalty of perjury" that she was "a citizen or non-citizen national of the United States." At the time she applied for the passport, Valdez possessed a Mexican birth record, which stated that she was born in 1957 in Mexico. This document was not included with her passport application. After obtaining a U.S. passport, Valdez applied for a delayed birth certificate from the State of Arizona, which denied the application after becoming aware of Valdez's Mexican birth record. The government subsequently revoked Valdez's passport, due to its discovery of the birth record.

After a grand jury indicted Valdez for violating § 1542, a first trial ended in a hung jury and mistrial, and Valdez retained new counsel before retrial. Following a four-day trial, the jury entered a guilty verdict.

1.      As an initial matter, the parties dispute the proper standard of review for Valdez's expert testimony challenges. Federal Rule of Evidence 103 requires that "if the opposing party violates the terms of [an] initial ruling, objection must be made when the evidence is offered to preserve the claim of error for appeal." Fed. R. Evid. 103 advisory committee's note to 2000 amendment. Because Valdez failed to object during her second trial when the government introduced evidence in violation of the district court's in limine ruling from the first trial, her objections

were not preserved, and so we will review them for plain error.

2.     The district court erroneously admitted certain evidence in Valdez's second trial. Anthony Jackson, an adjudications officer with U.S. Citizenship and Immigration Services, testified that if he were presented with a hypothetical individual with circumstances identical to Valdez's, "[i]t would tell me that they weren't a U.S. citizen and that they were an alien." Given that the jury was tasked with determining whether Valdez was a U.S. citizen, Jackson was not permitted to opine on this ultimate legal issue. *See United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997) (en banc) (noting that an expert may not "draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion [may] not necessarily follow from the testimony"). That the question was couched as a hypothetical does not change our conclusion. *See United States v. Dela Cruz*, 358 F.3d 623, 626 (9th Cir. 2004).

Similarly, Debbie Merced, a fraud prevention manager with the State Department's Western Passport Center, impermissibly offered opinion testimony given that she was a fact witness and not noticed as an expert, *see United States v. Lloyd*, 807 F.3d 1128, 1153–54 (9th Cir. 2015), and Robin Rodriguez, the operations office chief and fraud manager of the Arizona Department of Health Services, offered testimony regarding Valdez's use of the passport that was potentially prejudicial and of limited probative value, *see* Fed. R. Evid. 403;

*United States v. Wells*, 879 F.3d 900, 928–29 (9th Cir. 2018).

We conclude, however, that these errors did not "affect[] the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). The jury was instructed that it was free to accept or reject the experts' opinion testimonies, it heard other testimony that nonimmigrant visas of the sort Jackson described are reserved for non-U.S. citizens, and Valdez's Mexican birth record was admitted as evidence, thus creating a reasonable foundation from which to conclude that she was born in Mexico and not in the United States. Significantly, Valdez herself chose to testify in her defense, offering evasive and confusing responses to questions and, when asked by a juror if her father lied to procure her Mexican birth record given her insistence that she was born in the United States, replying, "No. He had no reason to lie." *See United States v. Kenny*, 645 F.2d 1323, 1346 (9th Cir. 1981) ("When the defendant elects to testify, he runs the risk that if disbelieved, the trier of fact may conclude that the opposite of his testimony is the truth."). Given the evidence presented at trial, Valdez's own testimony in particular, we conclude that improper admission of these testimonies did not change the outcome of the trial.

3.    The district court's jury instructions did not improperly relieve the government of its burden of proving that Valdez was not a U.S. citizen. Analyzing the instructions as a whole, and considering the clarification provided by counsel in

their closing arguments, we conclude that the jury was sufficiently informed of the proper burden and the availability of Valdez's defense. *See United States v. Joetzki*, 952 F.2d 1090, 1095 (9th Cir. 1991).

4.     The district court did not abuse its discretion when it denied Valdez's motion for a mistrial. Although two of the government's witnesses made passing references to an "encounter" with an immigration agent and "immigration apprehensions," the district court reasonably determined, given that "[t]he prejudicial value of the testimony was low" and "the reference was fleeting and the context vague," that the testimony did not "preclude[] the jury from impartially reaching a verdict." Additionally, although language in the district court's order indicates that the court might have articulated the wrong legal standard for Valdez's motion under Federal Rule of Criminal Procedure 29(c), any error was harmless given that the court properly "weigh[ed] the evidence and in so doing evaluate[d] for itself the credibility of the witnesses." *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).

5.     We decline to address Valdez's ineffective assistance of counsel arguments on direct appeal. We lack a sufficiently developed record, and while Valdez has clearly demonstrated her disagreement with defense counsel, and noted that counsel in her first trial made different decisions, she has not pointed to any

5

"extraordinary circumstances" justifying review on direct appeal. *United States v. Daychild*, 357 F.3d 1082, 1095 (9th Cir. 2004).

6. Finally, although we have identified multiple errors in Valdez's second trial, we conclude, after "analyzing the overall effect of the errors in the context of the evidence introduced at trial against the defendant," *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996), that the cumulative effect of these errors did not deprive Valdez of a fair trial.

**AFFIRMED.**