**Taliebu Daniel HURD, Petitioner,**

v.

**Tom CAREY, Warden, Respondent.**

**No. C 02–1457 VRW(PR).**

United States District Court,
N.D. California.

Aug. 27, 2003.

---

**27.** As noted, Harvey's Second Cause of Action alleges a violation of the LPS Act.

Taliebu Hurd, Vacaville, CA, Pro se.

## ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

WALKER, District Judge.

Petitioner Taliebu Daniel Hurd seeks a writ of habeas corpus under 28 USC § 2254.[1] Hurd claims that his Sixth and Fourteenth Amendment rights were violated because the trial court precluded evidence concerning the guilt of his accomplices, improperly admitted evidence of uncharged conduct, failed to give a limiting instruction regarding the same uncharged conduct, and provided a jury instruction that prevented free and fair deliberation. Hurd also contends that the cumulative effect of these alleged errors amounted to a denial of due process. For the reasons set forth below, the petition is DENIED.

### STATEMENT OF THE CASE

On September 8, 1999, Hurd was convicted by a Santa Clara County jury for possession of cocaine base for sale and transportation of cocaine base under California Health and Safety Code §§ 11351.5 and 11352. He was sentenced to 13 years in prison, a term that included enhancements for a prior felony and commission of an offense while out on bail.

---

1. Although Hurd styles his petition as one under 28 USC § 2241, he is, as a state prisoner, limited by the restrictions of 28 USC § 2254. See *Felker v. Turpin*, 518 U.S. 651, 662, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996).

The judgment against Hurd was affirmed by the California Court of Appeal on February 21, 2001, and an order modifying the opinion and denying a rehearing was filed on March 9, 2001. The California Supreme Court denied Hurd's petition for review on May 2, 2001.

On March 23, 2002, Hurd filed a petition for a writ of habeas corpus in this court and an order to show cause issued. The state attorney general's office answered on July 23, 2002, and Hurd filed a traverse on August 12, 2002.

## FACTS OF THE CASE

The California Court of Appeal summarized the facts of the case as follows:

On May 11, 1999, San Jose police officers were maintaining surveillance of a residence at 1356 Old Rose Place, hoping to find Torriano Walker, a man wanted for robbery in Santa Cruz. Police believed that Walker associated with someone who lived at this address. Officer Rosenbrook saw three Black males, including appellant [Hurd], in the front yard talking on cellular phones and apparently looking for traffic. During the five-hour period of the officer's observation, appellant went inside the house and came back numerous times. About six times he drove away from the premises and returned. The officer saw several activities that indicated drug trafficking at this residence.

Officer Rosenbrook thought appellant might be Walker, so he told other surveillance units to stop appellant's car. When officers did so, however, appellant produced his driver's license and gave his address, and he was allowed to go on his way.

On May 25, 1999, police again were watching the house at 1356 Old Rose Place. At about 8:00 p.m. Officer Scott Thorne saw a two-door Chevy Cavalier arrive at the house. Torriano Walker,

the driver, got out of the car while the passenger waited. Walker took a folded plaid shirt from the trunk and "wrapped it into a ball" before going inside the house. Ten or fifteen minutes later, the passenger, Clarence Grayson, also went inside. They returned to the car half an hour later with appellant, who got into the back seat of the car. The driver put the shirt, which he carried loosely now, back into the trunk and drove away. The car was stopped less than a mile away and each occupant was ordered out of the car, one at a time, with one to two minutes between each person. Appellant was the last one to get out. The officers then searched the car. Between the driver's seat and the center console they found a piece of plastic wrapped around 7.22 grams of cocaine base. Two more pieces of plastic, each containing a rock of cocaine base, were found inside a Burger King bag, which was on the rear passenger-side floorboard. One of those samples weighed 7.0 grams.

Walker had no money or personal property on him when arrested. Greyson had only $7.75. Appellant had $330 in cash and a pager. The pager beeped four times within an hour, but the arresting officer did not record any numbers from it.

None of the three occupants was under the influence of narcotics. Officer Richard Lira, testifying as an expert, expressed the opinion that the cocaine was possessed for sale, based on the quantity of the cocaine, the large amount of cash appellant was carrying, and the pager. Lira also believed that the activity observed by surveillance officers on May 11 was consistent with drug trafficking. Monique Hurd, appellant's wife of nearly three months, testified for appellant at trial. She said she was the one who had paged appellant repeatedly the night of

May 25, 1999. Appellant was supposed to pick her up from her parents' house, but he did not show up, so she paged him every hour beginning at 6:00 p.m. Shirley Jefferson was appellant's aunt. In May of 1999 her mother, Ruby Sims, lived at 1356 Old Rose Place, as did her disabled brother and appellant. Sims was in very poor health, so members of her large family frequently visited to help care for her. Jefferson was there every other day, sometimes for 12 hours, and she had never seen anyone in possession of drugs at the house. She generally did not visit on Tuesdays, however. Both May 11 and May 25 were Tuesdays.

Appellant, Walker, and Grayson were charged together with transporting narcotics and possessing cocaine base for sale. Walker and Grayson pleaded guilty to all the charges. The jury found appellant guilty. He admitted he had been out on bail when he committed the offenses, and he agreed to a court trial on the prior conviction allegations of the amended information. The trial court found these allegations to be true and sentenced appellant to a term of 13 years in prison.

*People v. Hurd,* No H020662, slip op at 1–3 (Cal Ct App Feb 21, 2001) (Resp't Ex F).

## DISCUSSION

### A. *Standard of Review*

A federal writ of habeas corpus may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 USC § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495.

The only definitive source of clearly established federal law under 28 USC § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Id.* at 412, 120 S.Ct. 1495; *Clark v. Murphy,* 317 F.3d 1038, 1044 (9th Cir.2003). While circuit law may be persuasive authority for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. *Id.*

### B. *Claims*

Hurd raises five claims for relief under 28 USC § 2254:(1) the trial court prevented him from presenting evidence re-

garding the guilt of his accomplices; (2) evidence of uncharged conduct was improperly admitted; (3) the trial court failed to provide a limiting instruction concerning the same uncharged conduct; (4) the jury instruction stifled free and fair deliberation; and (5) the cumulative effect of these alleged errors amounted to a denial of due process.

### 1. *Precluding the testimony of accomplices*

Hurd first contends that his Sixth and Fourteenth Amendment rights were violated because the trial court refused to allow the defense to call co-defendants (Walker and Grayson) as witnesses or to permit Hurd to introduce their guilty pleas into evidence. Pet at 9. Hurd claims that if he would have been able to introduce evidence of his co-defendant's guilt to the jury, by elimination, he would have been exonerated. Hurd also insists that the trial court should have barred Walker and Grayson from pleading the Fifth Amendment (because they had already pled guilty) or at least, that they should have been forced to do so personally, rather than through their attorneys.

■■■■ A federal habeas court "cannot review questions of state evidence law" and may only consider "whether the petitioner's conviction violated constitutional norms." *Henry v. Kernan,* 197 F.3d 1021, 1031 (9th Cir.1999). In order to determine whether there has been a constitutional violation in a case involving excluded evidence, the court must balance five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. In addition to proving constitutional error, the petitioner must also show that the

error had a "substantial and injurious" effect on the jury's verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

■■■ Here, Hurd is unable to establish that his due process right to a fair trial or his Sixth Amendment right to present a defense were denied as a result of the trial court's decision to exclude the guilty pleas of Walker and Grayson. First, the probative value of allowing Hurd to inform the jury of his co-defendant's guilty pleas would have been marginal at best. As the California Court of Appeal explained, "the mere fact that his companions pleaded guilty was not 'relevant'-that is, it did not have a 'tendency in reason to prove or disprove' *appellant's* culpability." *People v. Hurd,* No H020662, slip op at 1–3 (Cal Ct App Feb 21, 2001) (Resp't Ex F) (quoting Cal Evid Code § 210). Because the theory at trial was constructive possession, one co-defendant's guilt had no bearing on the guilt of any of the other defendants. See *id.* In the absence of a specific reason to believe otherwise, the probative value factor clearly weighs against finding a constitutional error concerning the trial court's exclusion of these pleas.

It is also apparent that Grayson and Walker's guilty pleas were not the sole evidence of their involvement, and their introduction would have been cumulative in nature. The California Court of Appeal correctly noted that "[a]ll the facts showing Grayson and Walker's participation were before the jury." Accordingly, admitting "the guilty pleas would not have caused the jury to be 'open for the first time to the possibility that someone other than appellant possessed the [cocaine].'" *Id.* (quoting the trial court).

In addition, because Hurd is unable to show why evidence of the guilty pleas was relevant and not cumulative, it is difficult to see why such evidence amounted to a major part of his attempted defense.

In sum, three of the five factors for determining a constitutional violation do no support Hurd's position and the other two factors are neutral. On this record, it simply cannot be said that the trial court's decision to exclude the guilty pleas amounted to constitutional error. And it certainly cannot be said that the state court's exclusion of the guilty pleas was contrary to, or involved an unreasonable application of clearly established federal law. See 28 USC § 2254(d).

■ Hurd is also unable to establish that excluding Grayson and Walker's guilty pleas had a substantial and injurious effect on his ability to prevail at trial. Because the additional evidence of the pleas was cumulative and mostly, if not entirely, irrelevant, Hurd's argument that their exclusion resulted in actual prejudice is unsupported. The California Court of Appeal points out that admitting Grayson and Walker's "guilty pleas might even have impaired appellant's defense, because the prosecution offered the theory that appellant had aided and abetted Walker's possession of the drugs." *Hurd,* No H020662, slip op at 1–3. Hurd claims in his traverse that this would have been a less serious offense, but under state law "[a]ll persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or *aid and abet in its commission* . . . are principals in any crime so committed." Cal Pen Code § 31 (emphasis added). Even assuming that there was a constitutional violation, exclusion of the guilty pleas was not prejudicial. Hurd is not entitled to federal habeas relief on this claim.

### 2. *Admitting evidence of uncharged conduct*

Hurd's second basis for relief is that his "due process rights were violated when the trial court erroneously permitted the prosecution to introduce police surveillance evidence on alleged misconduct that was not even charged in the indictment." Pet at 10. Hurd claims that this evidence was "not directly related" to the crime for which he was convicted and that its introduction at trial was "highly prejudicial." *Id.*

As mentioned above, a federal habeas court "cannot review questions of state evidence law" and may only consider "whether the petitioner's conviction violated constitutional norms." *Henry,* 197 F.3d at 1031. Even if "it appears that evidence was erroneously admitted, a federal court will interfere only if it appears that its admission violated fundamental due process and the right to a fair trial." *Id.* (citing *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). Furthermore, the Ninth Circuit has held that "[o]nly if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process" and "[e]ven then, the evidence must be of such quality as necessarily prevents a fair trial." *Jammal v. Van de Kamp,* 926 F.2d 918, 919 (9th Cir.1991) (internal quotations omitted).

In considering whether the trial court improperly admitted the evidence of Hurd's uncharged conduct, the California Court of Appeal explained that "[b]ecause evidence of uncharged offenses is inherently prejudicial, it must be excluded if the court determines that its probative value is substantially outweighed by its prejudicial effect." *Hurd,* No H020662, slip op at 6. Nevertheless, the court held that:

> [there was] no prejudice from the admission of the evidence. Appellant was caught transporting cocaine base, packaged for sale, along with two companions. The larger amount of cocaine was found on the floor next to his seat in the

back, and he was carrying a pager and $330 in cash. Even without the testimony indicating drug dealing from his home, the jury had ample evidence from which to find appellant guilty at least of aiding and abetting transportation and possession for sale.

*Id.* at 7–8; see also Cal Pen Code § 31 (stating that persons who aid and abet in the commission of a crime "are principals in any crime so committed").

■ Here, there were permissible inferences that a jury could draw from the suspicious behavior displayed by Hurd during Officer Rosenbrook's surveillance of his grandmother's house. Under California Evidence Code § 1101, other than evidence used to prove a person's disposition to commit a certain crime, evidence "relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge . . .)" is freely admissible. The jury certainly could have inferred that the surveillance evidence was relevant to show Hurd's knowledge of the drugs that were found in the car and/or his intent concerning those specific drugs. See *Hurd,* No H020662, slip op at 7. Under the broad standard used for federal habeas review, the reasonable possibility that a jury could make such a permissible inference, is sufficient, in and of itself, to defeat Hurd's claim. See *Jammal,* 926 F.2d at 919 (the possibility of any legitimate inference is sufficient to extinguish a petitioner's allegation that their right to fundamental due process was violated).

■ In addition, even if the trial court erred in admitting the surveillance evidence, Hurd is unable to show actual prejudice from the alleged error. To the contrary, the California Court of Appeal correctly concluded that the cocaine found on the floor next to Hurd and the large amount of cash he was carrying was more than enough for a rational jury to convict him, especially on a theory of constructive

possession. See *Hurd,* No H020662, slip op at 4, 7–8. In any case, it certainly was not objectively unreasonable for the state appellate court to determine that the admission of the surveillance evidence was harmless. See 28 USC § 2254(d). Hurd is not entitled to federal habeas relief on this claim.

### 3. *Failure to provide a limiting instruction regarding the uncharged conduct*

Hurd's third claim is that he was deprived of a fair trial when the trial court refused to provide a limiting instruction regarding evidence obtained through the surveillance of his grandmother's house. Pet at 11. Hurd insists that the failure to provide such an instruction was not harmless, and, in fact, amounted to a violation of his Fourteenth Amendment right to due process. *Id.*

During his direct appeal, the government conceded that the trial court erred in failing to provide a limiting instruction. *Hurd,* No H020662, slip op at 8. The state appellate court, however, agreed with the government that the error was not prejudicial. *Id.* In support of this holding, the court once again pointed to the "strong incriminating evidence obtained during the arrest that was independent of the challenged testimony." *Id.* at 9.

■ A petitioner is not entitled to federal habeas corpus relief based on an erroneous jury instruction unless "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Walker v. Endell,* 850 F.2d 470, 475–76 (9th Cir.1987) (quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). The Ninth Circuit has also advised that " 'an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law' and, thus, a habeas petitioner whose claim

involves a failure to give a particular instruction bears an 'especially heavy burden.'" *Villafuerte v. Stewart,* 111 F.3d 616, 624 (9th Cir.1997) (quoting *Henderson v. Kibbe,* 431 U.S. 145, 155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977)). Finally, in a case, such as this one, that does not involve structural error, the petitioner must show that "the error had a substantial and injurious effect or influence in determining the jury's verdict." *California v. Roy,* 519 U.S. 2, 5, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) (internal quotations omitted).

■ Here, there is no need to address whether the failure to provide a limiting instruction amounted to a constitutional violation because the error, if any, did not have a substantial and injurious effect or influence in determining the jury's verdict. Indeed, the state appellate court correctly emphasized that the evidence found during Hurd's arrest alone provided a sufficient basis to convict him. *Hurd,* No H020662, slip op at 8–9. At the very least, the court is unable to say that the California Court of Appeal was objectively unreasonable in determining that the absence of a limiting instruction did not prejudice Hurd. See 28 USC § 2254(d).

4. *Jury instruction stifled free and fair deliberation*

Hurd's fourth basis for relief is that the trial court provided "an unconstitutional jury instruction [CALJIC No 17.41] which chills free speech when the jury executes deliberations." Pet at 12. This instruction states:

The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on [penalty or punishment, or] any [other] improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation.

*Hurd,* No H020662, slip op at 9 (quoting CALJIC No 17.41.1 (1998 rev)). Hurd contends that this instruction misstates the law and prevented him from receiving a fair trial because it discouraged honest and candid deliberation among the jurors. See Pet at 12.

The United States Supreme Court has not handed down a decision on the constitutionality of CALJIC 17.41.1 or a similar jury instruction requiring jurors to report misconduct. Recently, however, the California Supreme Court addressed CALJIC 17.41.1 in *People v. Engleman,* 24 Cal.4th 436 (2002). The California Supreme Court found that CALJIC 17.41.1 did not violate the defendant's Sixth Amendment right to a jury trial because the right does not require absolute secrecy for jury deliberations "in the face of an allegation of juror misconduct, or that the constitutional right constitutes an absolute bar to jury instructions that might induce jurors to reveal some element of their deliberations." 24 Cal.4th at 443. Even though the court found that giving the instruction did not amount to constitutional error, the court exercised its supervisory power to direct that the instruction not be given in future trials due to the potential of CALJIC 17.41.1 to lead the jury to "shed the secrecy of deliberations" and to "draw the court unnecessarily into delicate and potentially coercive exploration of the subject matter of deliberations." *Id.* at 447.

■ In confronting this issue, the California Court of Appeal upheld the jury instruction and then stated that even if there was error, "there [was] no indication of any adverse effect on the verdict." *Hurd,* No H020662, slip op at 11. The state appellate court went on to point out that "[t]he record does not reveal any jury deadlock, holdout jurors, or other impair-

ment of deliberations, and the court received no report that a juror had failed to adhere to the court's instructions." *Id.* As a result, the court found no grounds for reversal. *Id.*

In order for Hurd to be entitled to federal habeas corpus relief, he must show that the jury instruction by itself so infected the entire trial that the resulting conviction violated due process. See *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Here, he is unable to do so because there is no "reasonable likelihood" that the jury applied CALJIC 17.41.1 in a manner that violated the Constitution. See *id.* Even though the California Supreme Court made a practical determination that CALJIC 17.41.1 should not be used at trials in the future, the court explicitly held stated that the instruction did not violate a defendant's federal or state right to a trial by jury. *Engelman*, 24 Cal.4th at 439–40. And in the absence of any United States Supreme Court precedent to the contrary, it simply cannot be said that the mere use of CALJIC 17.41.1 is a violation of clearly established federal law. See 28 USC § 2254(d).

Nor is there any reason to believe that the use of CALJIC 17.41.1 here had a substantial and injurious effect on the jury's verdict. See *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710. As the state appellate court noted, the trial court received no indications of holdouts jurors, deadlocks, or reports of juror misconduct that might raise suspicions that the jury instruction stifled free and fair deliberation. See *Hurd*, No H020662, slip op at 11. Absent any such evidence, there is no basis for

concluding that the California Court of Appeal unreasonably decided that the use of CALJIC 17.41.1, in this case, did not warrant reversal. See 28 USC § 2254(d).

### 5. Cumulative error

Hurd's final ground for relief is that the cumulative effect of all of the alleged errors mentioned above deprived him of a fair trial. Pet at 13. Hurd points out that the "state court of appeals within its opinion freely admitted that errors occurred in petitioners trial but none the less declared them to be harmless." *Id.* Hurd insists that the errors were "prejudicial" when viewed in the aggregate and, therefore, provide a sufficient basis for relief.

In rejecting this same claim, the California Court of Appeal held that "any error in admitting surveillance testimony, even combined with the court's failure to instruct with CALJIC No. 2.50, is insufficient to compel reversal on the facts of this case." *Hurd*, No H020662, slip op at 11. The state court's decision was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts. See 28 USC § 2254(d).

The Ninth Circuit has held that the cumulative effect of several trial errors may prejudice a defendant so much that his conviction must be overturned. See *Thomas v. Hubbard*, 273 F.3d 1164, 1179–81 (9th Cir.2001).[2] In order to obtain relief under a theory of cumulative error, a petitioner must prove that "although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal,

---

**2.** It is unclear whether the Ninth Circuit's holding is based on clearly established Supreme Court precedent. See *Alvarado v. Hill*, 252 F.3d 1066, 1068–69 (9th Cir.2001) (The question under § 2254(d) "is not whether [the conviction] violates due process as that con-

cept might be extrapolated from the decisions of the Supreme Court. Rather, it is whether [the conviction] violates due process under 'clearly established' federal law, as already determined by the Court.")

the cumulative effect of multiple errors may still prejudice a defendant." *United States v. Frederick,* 78 F.3d 1370, 1381 (9th Cir.1996).

 Here, the court has found no constitutional error in any of the four preceding claims raised by Hurd. This is significant because without a constitutional error, "nothing can accumulate to the level of a constitutional violation." *Mancuso v. Olivarez,* 292 F.3d 939, 957 (9th Cir.2002). The only ground upon which the court does not explicitly reject the possibility of a constitutional error is Hurd's claim concerning the failure to provide a limiting instruction regarding the uncharged surveillance evidence. But even if the court assumes that there was constitutional error in failing to provide this limiting instruction, there is no other constitutional error with which to apply a cumulative error analysis.

In addition, the government's case was based primarily on the evidence discovered during Hurd's arrest, and not on the surveillance evidence upon which Hurd insists a jury instruction should have been given. As a result, Hurd was not convicted with the type of weak evidence that is normally present when a petitioner is granted relief based on cumulative error. Cf. *Thomas,* 273 F.3d at 1179–81 (reversing conviction based on cumulative prejudicial effect of (a) admission of triple hearsay statement providing only evidence that defendant had motive and access to murder weapon; (b) prosecutorial misconduct in disclosing to the jury that defendant had committed prior crime with use of firearm; and (c) truncation of defense cross-examination of police officer, which prevented defense from adducing evidence that someone else may have committed the crime and evidence casting doubt on the credibility of main prosecution witness). Even if the trial court had totally excluded the surveillance evidence, thereby obviating the need for a special instruction, there was ample evidence for a jury to convict Hurd based on the government's theory of constructive possession. Thus, even after viewing all of the potential trial errors as a whole, the court cannot say that there was a substantial and injurious effect on the jury's verdict.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.