**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TIMOTHY CHARLES PARLE,
           *Petitioner-Appellee,*

v.

DAVID L. RUNNELS, Warden,
           *Respondent-Appellant.*

No. 06-16780

D.C. No.
CV-01-03487-WHA

OPINION

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted
June 13, 2007—San Francisco, California

Filed October 10, 2007

Before: Michael Daly Hawkins, A. Wallace Tashima, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Hawkins

13677

**COUNSEL**

Bruce Ortega, Deputy Attorney General for the State of California, San Francisco, California, for the respondent-appellant.

Martin N. Buchanan, Niddrie, Fish, & Buchanan LLP, San Diego, California, for the petitioner-appellee.

## OPINION

HAWKINS, Circuit Judge:

Domestic violence is a serious problem in America. When love turns to hate, grave injury—even death—can result. When that violence spins out of control, considerable problems confront the criminal justice system. The heat of the moment and the history of the relationship can make it quite difficult to assess responsibility. Sometimes it is clear who the aggressor is or has been; sometimes it is not so clear. The trial at issue here required a California jury to make just such a difficult determination. Because we conclude, as did the district court, that multiple errors in the admission and exclusion of evidence accumulated to deprive Timothy Charles Parle ("Parle") of a constitutionally fair trial, and that the one-sided prejudice caused by these errors made the state court's contrary conclusion objectively unreasonable, we affirm the grant of habeas relief.

## FACTS AND PROCEDURAL HISTORY

Because the relevant facts are recited in this court's prior opinion, *Parle v. Runnels*, 387 F.3d 1030, 1033-34 (9th Cir. 2004) (*Parle I*), and the district court's most recent order, *Parle v. Runnels*, 448 F. Supp. 2d 1158, 1160-61 (N.D. Cal. 2006) (*Parle III*), and are largely uncontested by the parties, we offer only a brief synopsis.

Parle killed his wife, Mary, on December 17, 1993, by stabbing her in the back during a domestic dispute. By all accounts, Parle and Mary had "a stormy relationship," punctuated by verbal and physical abuse by both parties. *Parle I,* 387

F.3d at 1033. At trial, Parle conceded that he unlawfully killed his wife, contesting only his state of mind at the time of the killing. Although Parle contended that his state of mind was such that he could be guilty of no more than second-degree murder or voluntary manslaughter, a jury convicted him of first-degree murder. *See Parle III*, 448 F. Supp. 2d at 1161.

On direct review, the California Court of Appeal identified numerous, serious errors in the trial proceedings. Specifically, the court of appeal held that the trial court:

- Violated Parle's psychotherapist-patient privilege by erroneously holding that the privilege had been waived and requiring Parle's psychiatrist to give damaging testimony against Parle;

- Improperly excluded rebuttal testimony from a defense expert about the effects of a manic episode due to severe bipolar disorder, relevant to whether Parle had the mental state required for a first-degree murder conviction;

- Improperly excluded evidence of Mary's propensity for violence, including her threats to Parle in the weeks leading up to his crime;

- Improperly excluded testimony of Parle's father relating to Parle's appearance and demeanor immediately before and after the crime; and

- Improperly admitted impermissible character evidence of Parle's threats to a police officer five years prior to his crime.

Despite these errors, the California Court of Appeal upheld Parle's conviction, concluding that the various errors—both individually and collectively—were harmless. The court of

appeal reasoned that the erroneously excluded (or included) evidence was "essentially cumulative" of other properly admitted evidence, and therefore that it was not reasonably probable that the jury would have returned a different verdict but for the errors.[1] *People v. Parle*, No. H017348, slip op. at 56 (Cal. Ct. App. 2000). As such, the court held that the errors did not result in a "serious flaw" in Parle's trial. Accordingly, "the determinations by the judge and jury were reliable" and Parle's trial "fundamentally fair." *Id.* at 57 (internal quotations omitted).

Parle thereafter sought federal habeas relief. Following extensive briefing, the district court subsequently granted relief, concluding that: (1) "the California Court of Appeal clearly erred in finding that admission of the victim's diary did not violate the Confrontation Clause" and (2) "the cumulative effect of this and several other evidentiary errors deprived petitioner of his due process right to a fair trial." This court reversed on appeal, concluding that no Confrontation Clause violation occurred, and remanded for further consideration of Parle's cumulative error/due process claim. *Parle I*, 387 F.3d at 1046.

On remand, the district court again granted habeas relief. The district court concluded: (1) the California Court of Appeal engaged in an issue-by-issue analysis, rather than a cumulative effect analysis; and (2) to the extent the state court actually performed a cumulative error analysis, it applied an incorrect standard—whether the errors resulted in a "serious flaw" in defendant's trial—rather than a "substantial and injurious effect" standard. This court again reversed, concluding that "[the state] court, however imperfectly, conducted cumulative error review of the trial" and remanding "for the district court to determine whether the decision was an objectively

---

[1]With regard to the constitutional error resulting from Parle's psychiatrist's testimony, the court concluded it was "harmless beyond a reasonable doubt." *See Chapman v. California*, 386 U.S. 18, 24 (1967).

unreasonable application of [clearly established Supreme Court law]" under AEDPA.[2] *Parle v. Runnels*, No. 05-16610, 177 Fed. Appx. 759, 759 (9th Cir. Apr. 27, 2006) (*Parle II*).

Following this second remand, the district court once again granted habeas relief, concluding that "[t]he erroneous evidentiary rulings . . . infected the trial with such unfairness that it rose to the level of a due-process violation." *Parle III*, 448 F. Supp. 2d at 1171-72. Because "the [cumulative] impact of these errors is devastating to one's confidence in the reliability of the verdict," the district court held that the California Court of Appeal's "decision to the contrary was an unreasonable application of [*Chambers v. Mississippi*, 410 U.S. 284 (1973), *Krulewitch v. United States*, 336 U.S. 440 (1949), and *Hawkins v. United States*, 358 U.S. 74 (1954)]." *Parle III*, 448 F. Supp. 2d at 1172. The State timely appealed.[3]

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(c)(3) and "review *de novo* a district court's order granting a writ of habeas corpus." *Parle I*, 387 F.3d at 1034.

Under AEDPA, habeas relief is available only where a state court's rulings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the [United States] Supreme Court," 28 U.S.C. § 2254(d)(1), or were based on "an unreasonable determination of the facts," *id.* § 2254(d)(2). Where, as here, the state supreme court denies review of a prisoner's habeas petition without comment, we "look to the last reasoned state-court decision": in this case, that of the California

---

[2]The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241 *et seq.*

[3]The district court stayed the effectiveness of its order until ninety days after all appellate proceedings become final. *Id.*

Court of Appeal. *Van Lynn v. Farmon*, 347 F.3d 735, 738 (9th Cir. 2003).

A state court's decision involves an unreasonable application of clearly established federal law "if 'the state court identifies the correct governing legal principle[ ] from [Supreme Court] decisions, but unreasonably applies that principle to the facts of the prisoner's case.' "[4] *Ramirez v. Castro*, 365 F.3d 755,762 (9th Cir. 2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). The state court's application must be more than erroneous, it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Finally, if a state court's decision was objectively unreasonable, we may grant habeas relief only if the error had a "substantial or injurious effect" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Parle I*, 387 F.3d at 1035.

## DISCUSSION

### I. Clearly Established Law

### A) Cumulative Error and Due Process

**[1]** The Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair. *Chambers*, 410 U.S. at 298, 302-03 (combined effect of individual errors "denied [Chambers] a trial in accord with traditional and fundamental standards of due process" and "deprived Chambers of a fair trial").[5] The cumula-

---

[4]Our prior holding that the state court performed cumulative error review, *Parle II*, 177 Fed. Appx. at 759, operates as law of the case establishing that the state court's decision was not "contrary to" clearly established Supreme Court law and prevents reconsideration of this issue, *see Murdoch v. Castro*, 489 F.3d 1063, 1067-68 (9th Cir. 2007).

[5]*See also Montana v. Egelhoff*, 518 U.S. 37, 53 (1996) (stating that *Chambers* held that "erroneous evidentiary rulings can, in combination,

tive effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal. *Chambers*, 410 U.S. at 290 n.3.[6]

Under traditional due process principles, cumulative error warrants habeas relief only where the errors have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Such "infection" occurs where the combined effect of the errors had a "substantial and injurious effect or influence on the jury's verdict." *Brecht*, 507 U.S. at 637 (internal quotations omitted); *see also Thomas*, 273 F.3d at 1179-81 (noting similarity between *Donnelly* and *Brecht* standards and concluding that "a *Donnelly* violation necessarily meets the requirements of *Brecht*"). In simpler terms, where the combined effect of individually harmless errors renders a criminal defense "far less persuasive than it might [otherwise]

---

rise to the level of a due process violation"); *Taylor v. Kentucky*, 436 U.S. 478, 487 n.15 (1978) ("[T]he cumulative effect of the potentially damaging circumstances of this case violated the due process guarantee of fundamental fairness . . . .").

Although we have never expressly stated that *Chambers* clearly establishes the cumulative error doctrine, we have long recognized the due process principles underlying *Chambers*. *See, e.g.*, *Thomas v. Hubbard*, 273 F.3d 1164, 1179-80 (9th Cir. 2002) (analyzing cumulative error in AEDPA habeas petition); *Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000) (noting that cumulative error doctrine applies on pre-AEDPA habeas review); *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996) (recognizing the importance of considering "the cumulative effect of multiple errors").

[6]*See also Thomas*, 273 F.3d at 1179 ("In analyzing prejudice in a case in which it is questionable whether any 'single trial error examined in isolation is sufficiently prejudicial to warrant reversal,' this court has recognized the importance of considering 'the cumulative effect of multiple errors' and not simply conducting 'a balkanized, issue-by-issue harmless error review.' ") (quoting *Frederick*, 78 F.3d at 1381).

have been," the resulting conviction violates due process. *See Chambers*, 410 U.S. at 294, 302-03.

## B) Harmless Error and Cumulative Evidence

In evaluating a due process challenge based on the cumulative effect of multiple trial errors, a reviewing court must determine the relative harm caused by the errors. If the evidence of guilt is otherwise overwhelming, the errors are considered "harmless" and the conviction will generally be affirmed. *See Frederick*, 78 F.3d at 1381 (citing *United States v. Berry*, 627 F.2d 193, 201 (9th Cir. 1980)). The "logical corollary" of this harmless error doctrine is that trial errors are more likely to be prejudicial to a defendant—i.e., *not* harmless—when the government's case on a critical element is weak. *Id.* Accordingly, in determining whether the combined effect of multiple errors rendered a criminal defense "far less persuasive" and had a "substantial and injurious effect or influence" on the jury's verdict, the overall strength of the prosecution's case must be considered because "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland v. Washington*, 466 U.S. 668, 696 (1984).[7]

Where a trial court commits an evidentiary error, the error is not necessarily rendered harmless by the fact there was other, cumulative evidence properly admitted. *See Krulewitch*, 336 U.S. at 444-45 (holding that, in a close case, erroneously admitted evidence—even if cumulative of other evidence—can "tip[ ] the scales" against the defendant); *Haw-*

---

[7]*See also Glasser v. United States*, 315 U.S. 60, 67 (1942) ("[Where] the scales of justice may be delicately poised between guilt and innocence . . . error, which under some circumstances would not be ground for reversal, cannot be brushed aside as immaterial since there is a real chance that it might have provided the slight impetus which swung the scales toward guilt.").

*kins*, 358 U.S. at 80 (concluding that erroneously admitted evidence, "though in part cumulative," may have "tip[ped] the scales against petitioner on the close and vital issue of his [state of mind]").

## C) Summary

[2] In sum, the Supreme Court has clearly established that the combined effect of multiple trial errors may give rise to a due process violation if it renders a trial fundamentally unfair, even where each error considered individually would not require reversal. *Donnelly*, 416 U.S. at 643; *Chambers*, 410 U.S. at 290 n.3, 298, 302-03. Furthermore, the cumulative nature of the challenged evidence does not necessarily render its inclusion (or exclusion) harmless. *Krulewitch*, 336 U.S. at 444-45. Rather, the fundamental question in determining whether the combined effect of trial errors violated a defendant's due process rights is whether the errors rendered the criminal defense "far less persuasive," *Chambers*, 410 U.S. at 294, and thereby had a "substantial and injurious effect or influence" on the jury's verdict, *Brecht*, 507 U.S. at 637 (internal quotations omitted).

## II. AEDPA Review

## A) *Chambers v. Mississippi*

Because *Chambers* clearly established that the cumulative effect of trial errors can violate due process, it provides the starting point for our analysis.[8] In light of the district court's thorough and accurate account of the *Chambers* decision, *see Parle III*, 448 F. Supp. 2d at 1162-63, we recount its facts only briefly.

---

[8]The State's argument that Parle's cumulative error claim is not cognizable on habeas review because it asks the court to recognize a new constitutional rule, *see Teague v. Lane*, 489 U.S. 288 (1989), lacks merit. As noted above, *Chambers* and its progeny clearly established the cumulative error doctrine decades ago.

Leon Chambers ("Chambers") was charged with murder for allegedly shooting a police officer. Prior to Chambers's trial, Gable McDonald ("McDonald") came forward and provided a sworn confession that *he* was the actual shooter. *Chambers*, 410 U.S. at 287. However, at a subsequent hearing, McDonald recanted and was released from custody. *Id.* at 288. Nonetheless, Chambers's primary defense at trial was that McDonald was the real shooter. *Id.* at 288-89. Chambers called McDonald to the stand and had his out-of-court confession read to the jury. On cross-examination, however, McDonald testified that he had repudiated his confession, explaining that he falsely confessed only after being assured that he would not go to jail and would share in proceeds from a tort suit Chambers would bring against the town. *Id.* at 288-89, 291. Applying state rules of evidence, the trial court prevented Chambers from treating McDonald as an adverse witness in order to cross-examine him about his repudiated confession because McDonald's testimony had not specifically implicated Chambers. *Id.* at 291-92.

The trial court also excluded as inadmissible hearsay the testimony of three witnesses that McDonald had confessed to them individually that he was the shooter. *Id.* at 292-93. Although Chambers was able to introduce limited testimony impeaching McDonald's credibility and supporting his theory of the case, as a result of the trial court's rulings, he was prevented from presenting critical evidence to support his claim that McDonald was the actual shooter, and his primary defense was therefore "far less persuasive than it might [otherwise] have been." *Id.* at 294.

Chambers appealed the conviction to the Mississippi Supreme Court, which affirmed. The Supreme Court granted certiorari, and held that the combined effect of the trial court's rulings preventing Chambers from both cross-examining McDonald and introducing witness testimony of McDonald's previous confessions "denied [Chambers] a trial in accord with traditional and fundamental standards of due process."

*Id.* at 302. Notably, the Supreme Court so held even though the evidence excluded as a result of the trial court's errors was at least in part cumulative of other properly admitted evidence[9] and the state appellate court had identified no errors of state law.

## B) Parle's Case

In light of the due process principles established in *Chambers* and the starkly one-sided impact of the errors in Parle's case, the California Court of Appeal's conclusion that the cumulative effect of the multiple evidentiary errors did not violate Parle's due process rights was an objectively unreasonable application of clearly established due process law as determined by the Supreme Court.[10] The district court's grant of habeas relief must therefore be affirmed.

A unique and critical thread runs through the trial errors in this case: *all* of the improperly excluded evidence in Parle's

---

[9]For example: (1) McDonald's sworn, written confession had been read to the jury, 410 U.S. at 291; (2) a witness testified that he "saw McDonald shoot the officer," *id.* at 289; (3) a second witness testified that "he saw McDonald immediately after the shooting with a pistol in his hand," *id.*; (4) another witness contradicted McDonald's account that he had been having beers in a cafe at the time of the shooting, *id.* at 292; and (5) a gun dealer testified that McDonald owned a .22-caliber—the same caliber as the shooter's—at the time of the crime, *id.* at 294-95 & n.5.

[10]The district court held that the California Court of Appeal's conclusion that the errors were collectively harmless because the evidence at issue was "essentially cumulative" of other properly admitted evidence was also an unreasonable application of Supreme Court precedent establishing that the cumulative nature of evidence does not necessarily render its erroneous inclusion (or exclusion) harmless. *See Parle III,* 448 F. Supp. 2d at 1167-68; *see also Krulewitch*, 336 U.S. at 444-45; *Hawkins*, 358 U.S. at 80. However, because we conclude that the cumulative effect of the multiple trial errors violated Parle's due process rights and the California Court of Appeal's conclusion to the contrary was an objectively unreasonable application of clearly established Supreme Court law, we need not— and do not—examine this additional basis for habeas relief.

case—i.e., expert testimony about the effects of a bipolar manic episode on one's state of mind, the victim's previous threats and history of violence, and Parle's father's testimony about Parle's appearance and demeanor immediately before and after the crime—supported Parle's defense that he lacked the requisite state of mind for first-degree murder; at the same time, *all* of the erroneously admitted evidence—i.e., Parle's psychiatrist's testimony in violation of privilege about Parle's minor bipolar disorder and relative stability in treatment, and evidence of Parle's violent threats to a police officer—undermined Parle's defense and credibility and bolstered the State's case. The combined effect of these errors, like those in *Chambers*, rendered Parle's defense "far less persuasive than it might have been," *id.* at 294, and therefore had a "substantial and injurious effect or influence on the jury's verdict," *Brecht*, 507 U.S. at 637, violating Parle's due process rights. And, given the plainly one-sided prejudice resulting from these errors and their direct relevance to the *only* contested issue before the jury, the state court's conclusion to the contrary was objectively unreasonable.

### 1) Erroneous Admission and Exclusion of Medical Testimony

[3] The trial court erroneously admitted damaging testimony from Parle's psychiatrist, Dr. Antoinette Acenas, in violation of Parle's constitutional right to privacy,[11] while simultaneously preventing testimony from Dr. Jay Jackman—

---

[11]The right to privacy of a patient's communications with his psychotherapist is grounded in the federal and state constitutions. *Caesar v. Mountanos*, 542 F.2d 1064, 1067-68 (9th Cir. 1976) (recognizing a right to privacy in psychotherapist-patient relationship arising out of the Fourteenth Amendment to the U.S. Constitution); *San Diego Trolley, Inc. v. Superior Court*, 105 Cal. Rptr. 2d 475, 481 (Cal. Ct. App. 2001) (recognizing right to privacy protected by California Constitution article I, § 1). This right to privacy exists in addition to the statutory protection of confidential communications between patient and psychotherapist. Cal. Evid. Code § 1014.

Parle's expert medical witness—about the effects of a bipolar manic episode "relevant to the question whether [Parle] actually had the mental state required for a first degree murder conviction." *Parle*, No. H017348, slip op. at 31. The cumulative effect of these errors alone violated Parle's due process rights and rendered his trial unfair.

a) *Dr. Acenas*

In her testimony, Dr. Acenas was compelled to reveal Parle's private, confidential statements that Mary made him "ready to explode" and that he had thought of hurting her (and others), but noted that Parle had never made any specific complaints about Mary's violent behavior towards him. Dr. Acenas further testified that Parle suffered from the more minor Type II bipolar disorder, characterized by shorter and less severe mood swings. Finally, she testified that Parle had not exhibited any manic symptoms around the time of (or in the 18 months prior to) his crime and generally appeared to be doing well on his medication. The State seized upon this testimony in its closing statement, arguing that it bolstered the State's theory that Parle had long held violent thoughts about his wife and possessed the requisite state of mind at the time of the crime to be convicted of first-degree murder. Despite the apparent prejudice to Parle from this error, the California Court of Appeal nonetheless held that the error was "harmless beyond a reasonable doubt" because the unconstitutionally admitted testimony "was merely cumulative of other evidence" insofar as "[t]he jury already knew Parle was seeing a psychiatrist . . . . [and] that he and Mary had been having marital problems." *People v. Parle*, No. H017348, slip op. at 32.

However, as the district court concluded, the other evidence of Parle's medical and marital history "was a far cry from the force of the medical testimony compelled in violation of the privilege." *Parle III*, 448 F. Supp. 2d at 1165. Dr. Acenas's testimony was cumulative only in the most general sense that

it also discussed Parle's marriage and general psychological health. The specificity of the testimony, however, was mirrored nowhere else in the record. Moreover, there was no other specific evidence of Parle's violent thoughts toward Mary. Although the record contains evidence of Parle's violent tendencies in general, as well as his stormy marriage with Mary in particular, Dr. Acenas provided the *only* medical testimony laying the foundation for the State's theory that Mary's murder was premeditated. Furthermore, even if the evidence *were* cumulative, this fact does not render its erroneous admission necessarily harmless. *See Krulewitch*, 336 U.S. at 444-45.

### b)   Dr. Jackman

The prejudice caused by Dr. Acenas's erroneously admitted testimony was exacerbated by the erroneous *exclusion* of testimony from Dr. Jackman—Parle's expert psychiatric witness. Although Dr. Jackman was permitted to testify that Parle suffered from the more severe Type I bipolar disorder and appeared to be in the midst of a manic episode on the night of his crime, he was erroneously prevented from testifying about the effects of a manic episode on one's general state of mind and ability to premeditate. Specifically, the trial court erroneously struck Dr. Jackman's statements that "bipolar disorder is characterized by impulsiveness and poor judgment, and that a person does not stop to consider the consequences or alternatives during a manic episode." *Parle III*, 448 F. Supp. 2d at 1165. As the California Court of Appeal held, Parle was thus erroneously denied the opportunity to present critical testimony "relevant to the question whether [he] actually had the mental state required for a first degree murder conviction." *Parle*, No. H017348, slip op. at 31.

Although this excluded testimony went to the only contested issue at trial and clearly undermined Parle's defense, the California Court of Appeal nonetheless concluded that this error did not violate Parle's due process rights because he

"was permitted to present some expert testimony about his mental disorder," including Dr. Jackman's opinion that "[Parle's] mental disorder caused him to experience stress, pressure, irritability, agitation, and mood swings," and that "a manic episode may cause a person to become stressed, agitated, and possibly violent." *Id.* at 34-35.

As the district court noted, however, this alternative evidence "was a thin substitute for the evidence wrongfully excluded." *Parle III*, 448 F. Supp. 2d at 1165. The evidence admitted—that manic episodes may cause a person "to become stressed, agitated, and possibly violent"—sheds very little light on whether Parle possessed the requisite state of mind for first-degree murder, whereas the evidence excluded —that bipolar disorder is characterized by impulsiveness and poor judgment, and that a person suffering from a manic episode does not stop to consider consequences or alternatives— speaks directly to the *only* relevant issue: premeditation.

The prejudicial effect of the erroneous exclusion of Dr. Jackman's testimony was made worse during closing arguments: Parle's counsel was specifically prevented from arguing the effects of a manic episode on deliberation. During his closing argument, Parle's counsel argued that Parle was suffering from a manic episode at the time of the murder and "he was less likely to carefully consider his actions and less able to deal with the antagonism that was inherent in the relationship, apt to be more rash, more impulsive as a result of this disorder, less able to exercise good judgment." The prosecutor objected, moving the court to instruct the jury there was no evidence to support "the last two or three assertions." The objection was sustained, and the court instructed that "[a]rguments of counsel, whether it be the prosecution or the defense, are merely argument and not evidence."

The prosecution, however, was permitted to attack Parle's defense and opine that "*[t]he evidence is that bipolar disorder has not been testified to as diminishing a person's ability to*

*premeditate or deliberate at all.*" *Parle III*, 448 F. Supp. 2d at 1166.

### c) Cumulative Effect of Errors / Cumulative Nature of Evidence

**[4]** Taken together, the wrongful admission of Dr. Acenas's testimony and the erroneous exclusion of portions of Dr. Jackman's left the jury with only half the picture. It had reliable testimony from Parle's own psychiatrist about Parle's relative good mental health prior to the crime, as well as his history of violent tendencies and hatred for his wife—all supporting the prosecution's argument for premeditation—but lacked critical evidence of whether Parle formed the requisite mental state in the midst of a manic episode caused by severe bipolar disorder, which clearly would have bolstered his defense. The cumulative effect of these two errors *alone* rendered Parle's defense "far less persuasive than it might have been" and would have had a "substantial and injurious effect or influence" on the jury's verdict.[12]

Like the evidence excluded in *Chambers*, this wrongfully admitted and excluded evidence went to the heart of the cen-

_____

[12]The State discounts the import of this medical testimony, noting the "overwhelming nature of all of the properly-admitted evidence establishing that [Parle] premeditated and deliberated the killing of his wife." State's Br. at 35. However, as discussed above, although the record contained other evidence establishing Parle's violent tendencies, no other evidence so directly pertained to his mental state at the time of the crime.

Furthermore, the State's reliance on this court's prior holding that the record contained "overwhelming evidence" of Parle's intent misses the mark. *See Parle I*, 387 F.3d at 1044. There is no question that Parle *intended* to kill his wife; the only issue before the California Court of Appeal was his state of mind at the time of this intentional killing, i.e., whether the killing was intentional and deliberated (first degree murder) or intentional but not deliberated (second degree murder). This court's prior decision is silent as to the strength of the State's evidence on this question.

tral issue in the case. In *Chambers*, the excluded evidence pertained to the identity of the shooter—Chambers's primary defense—while, here, the erroneously admitted and excluded evidence pertained to the only relevant issue (and Parle's only defense): Parle's state of mind at the time of the crime. Furthermore, even if—as the California Court of Appeal concluded—the evidence in question was "cumulative" of other properly admitted evidence, the errors may nonetheless have tipped the scales against Parle and rendered his trial fundamentally unfair. *See Krulewitch*, 336 U.S. at 444-45. Indeed, as discussed above, the erroneously excluded evidence in *Chambers* was also largely cumulative of other evidence properly before the jury, yet the Supreme Court had no difficulty concluding that the combined effect of the trial errors required reversal. *See supra* note 9; *see also Parle III*, 448 F. Supp. 2d at 1167 (discussing cumulative nature of evidence in *Chambers*).

[5] In sum, the cumulative effect of the erroneous inclusion of Dr. Acenas's testimony and wrongful exclusion of portions of Dr. Jackman's testimony rendered Parle's defense "far less persuasive," infecting his trial with unfairness, and depriving him of due process. *See Chambers*, 410 U.S. at 294; *Donnelly*, 416 U.S. at 643. Furthermore, in view of the unique symmetry of these errors—by which each so starkly amplified the prejudice caused by the other—and their direct relation to the sole issue contested at trial, the California Court of Appeal's conclusion to the contrary was objectively unreasonable, and Parle is entitled to habeas relief.

## 2) Additional Errors

[6] The trial court's errors did not end with the medical testimony. Rather, the prejudicial impact of those errors was exacerbated by the trial court's additional errors in excluding evidence of Mary's previous threats and character for violence and admitting evidence of Parle's previous violent threats against a police officer. Viewed collectively with the

medical testimony errors, these errors undeniably rendered Parle's defense "far less persuasive than it might have been" and thereby violated his due process rights.

### a) Mary's Character for Violence and Threats Against Parle

The trial court also erred in excluding evidence pertaining to Mary's character for violence and threats against Parle. First, the trial court erred in preventing Mary's nurse from testifying that, thirteen days prior to the crime, Mary expressed "vindictiveness" toward Parle and had stated that she'd "like to hurt him" and "want[ed] to kill him." Second, the trial court erroneously excluded as hearsay Parle's testimony about Mary's various threats against him, including her threat—four days before Parle's crime—to kill him and their son.

Once again, the California Court of Appeal held that the exclusion of this evidence, though erroneous, was harmless because it "was essentially cumulative of other evidence." *Id.* at 56. As *Chambers* and *Krulewitch* make clear, just because evidence is cumulative does not necessarily render its wrongful exclusion harmless. Though true the record contained evidence of Mary's history of violence toward Parle, the excluded testimony provided the only evidence of Mary's threats to *kill* Parle in the days leading up to his crime. Furthermore, the bulk of the admitted testimony regarding Mary's character came from "interested witnesses"—i.e., Parle and his father—whereas the testimony of Mary's nurse would have provided unbiased and seemingly reliable corroboration of the other evidence of Mary's violent tendencies toward Parle.

### b) Parle's Threats Against a Police Officer

Finally, the trial court also erred in admitting impermissible character evidence of Parle's threats to a police officer five

years prior to his crime, but concluded that the error was harmless in light of other evidence of Parle's character for threatening violence. The inclusion of this evidence, especially when coupled with the exclusion of certain evidence concerning Mary's violent tendencies and threats against Parle, once again painted an incomplete picture for the jury: The evidence depicted Parle as an extremely violent individual based on five-year-old allegations, yet neglected to demonstrate that Mary had threatened to kill Parle only days before. Given that the sole issue before the jury was Parle's state of mind *at the time of the crime*, this unbalanced presentation necessarily undermined Parle's defense.

## CONCLUSION

**[7]** Because all of the trial court's errors pertained to evidence relevant to the *only* issue before the jury—Parle's state of mind at the time of the crime—and all of the improperly admitted evidence bolstered the State's case, while all of the erroneously excluded evidence rendered Parle's defense far less persuasive than it might have been, it was objectively unreasonable for the California Court of Appeal to conclude that the combined effect of these errors did not violate Parle's due process rights. That the evidence in question may have been partially cumulative of other properly admitted evidence does not render the errors necessarily harmless because the State's case establishing Parle's premeditation was less than overwhelming, and the jury's verdict is therefore more likely to have been affected by the trial court's errors. *See Strickland*, 466 U.S. at 696; *Krulewitch*, 336 U.S. at 444-45; *see also Frederick*, 78 F.3d at 1381.

As in *Chambers*, the seminal cumulative error case, the errors in Parle's trial went to the heart of the defense's case and the *only* issue before the jury. The combined effect of the trial court's multiple errors rendered Parle's defense "far less persuasive than it might have been," *Chambers*, 410 U.S. at 294, resulting in a "substantial and injurious effect or influ-

ence" on the jury's verdict, *Brecht*, 507 U.S. at 637, which "so infected the trial with unfairness as to make the resulting conviction a denial of due process," *Donnelly*, 416 U.S. at 643. Further, under the unique and unfortunate circumstances of this case, the California Court of Appeal's contrary conclusion was an objectively unreasonable application of clearly established federal due process law, as set forth in *Chambers*, *Donnelly*, and *Brecht*.[13]

In so holding, like the *Chambers* Court itself, "we establish no new principles of constitutional law." 410 U.S. at 302. "Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived [Parle] of a fair trial," *id.* at 302-03, and the California Court of Appeal's decision to the contrary was objectively unreasonable because, in light of the one-sided impact of the multiple errors, "the[ir] collective presence . . . is devastating to one's confidence in the reliability of this verdict." *Killian v. Poole*, 282 F.3d 1204, 1211 (9th Cir. 2002).

For the foregoing reasons, the district court's order granting Parle's habeas petition is **AFFIRMED**.

---

[13]*Cf. Thomas*, 273 F.3d at 1180-81 (combined effect of errors resulting in: (1) the admission of evidence establishing motive and access to murder weapon, (2) the admission of evidence of prior weapon use, (3) violation of defendant's right to confront a key witness, and (4) the exclusion of evidence of an alternative perpetrator violated due process, and the "[state court's] contrary conclusion [constituted] an unreasonable application of *Donnelly*'s well-established principles of due process law").