**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

MAR 05 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RICKY DAVID SECHREST, | No. 11-99015 |
| Petitioner - Appellant, | D.C. No. 3:92-cv-00536-ECR-WGC |
| v. | |
| RENEE BAKER, | MEMORANDUM[*] |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the District of Nevada
Edward C. Reed, Jr., Senior District Judge, Presiding

Argued and Submitted December 17, 2014
Pasadena, California

Before: PREGERSON, W. FLETCHER, and BERZON, Circuit Judges.

Ricky David Sechrest was convicted in 1983 in Nevada state court of two

counts of first degree murder and two counts of kidnapping.  Sechrest seeks habeas

relief for these convictions.  We have jurisdiction under 28 U.S.C. § 2254, and we

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

affirm the district court's denial of habeas relief.

This case was last before us in 2008. *Sechrest v. Ignacio*, 549 F.3d 789 (9th Cir. 2008). A full recitation of the factual and procedural history appears in the 2008 opinion. *Id*. at 797-801.

This appeal centers on two subparts of the fourth claim in Sechrest's fourth amended petition. In "Ground 4A," Sechrest argued that he was deprived of his constitutional right to a fair trial when the prosecutor improperly aligned himself with the jury and vouched for the State's witnesses throughout the trial. The district court denied relief as to that claim but sua sponte granted a certificate of appealability (COA). Subsequently, this panel granted a COA as to a second issue raised in Sechrest's opening brief, "Ground 4I" of the petition, in which Sechrest argued that the cumulative effect of the prosecutorial misconduct that pervaded his trial deprived him of his right to a fair trial.

Sechrest filed his original federal habeas petition on August 13, 1992. *Sechrest*, 549 F.3d at 800. Therefore, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) does not apply. *Summerlin v. Schriro,* 427 F.3d 623, 628 (9th Cir. 2005) (en banc). We review the district court's denial of Sechrest's habeas petition *de novo* and the district court's factual findings for clear error. *Id.*

Sechrest argues that the district court erred when it determined that prosecutorial misconduct during the guilt phase of Sechrest's trial did not prejudice the jury's verdict. We agree that the prosecutor made multiple improper statements, of various types, during both his opening statement and closing argument, which we do not condone. Where constitutional error due to prosecutorial statements is alleged, we examine "'the entire proceedings' to determine whether the prosecutor's remarks 'so infected the [guilt phase] trial with unfairness as to make the resulting conviction a denial of due process.'" *Hall v. Whitley*, 935 F.2d 164, 165 (9th Cir. 1991) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)) (brackets omitted). Furthermore, to warrant habeas relief, the error must have "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted).

Here, the prosecutor's improper statements aligning himself with the jury and vouching for witnesses did not make Sechrest's trial "so fundamentally unfair as to deny him due process." *Hall*, 935 F.2d at 165 (internal quotation marks omitted). "[T]he [prosecutor's] comments were isolated moments in a [week-long] trial[,] . . . the judge clearly instructed the jury that what was said in closing arguments was not evidence and could not be considered in deciding the facts[,

3

and] the evidence connecting [Sechrest] to the crime was overwhelming." *Id.* at 165-66 (internal quotation marks omitted).

Sechrest argues that the district court failed to consider the cumulative effect of the prosecutor's multiple improper statements.[1] "[T]he combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973)). Thus, "[t]he cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal." *Id.* To evaluate a due process challenge based on the cumulative effect

---

[1] The district court dismissed several of Sechrest's allegations of prosecutorial misconduct because they were not specifically raised in Sechrest's second amended petition and thus, the court held, were beyond the scope of this court's remand. *Sechrest v. Baker*, 816 F. Supp. 2d 1017, 1048-49; 1051-53; 1061 n.6 (D. Nev. 2011). Our remand did not, however, limit the district court's consideration of Sechrest's prosecutorial misconduct claim. *See Sechrest*, 549 F.3d at 817 (remanding "Sechrest's previously defaulted claims" for "appropriate consideration"). Nor did Sechrest raise a *new* prosecutorial misconduct claim on remand. Instead, he challenges as improper statements made by the prosecutor during the guilt-phase of his trial, the same claim he raised in his second amended petition. The fact that Sechrest has highlighted more examples of the prosecutor's misconduct does not fundamentally alter the claim. *Cf. Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999) (holding that even though "the precise factual predicate for Weaver's claim changed after the district court conducted its evidentiary hearing . . . new factual allegations do not render a claim unexhausted unless they fundamentally alter the legal claim already considered by the state courts.") (internal quotation marks omitted).

of multiple trial errors, "a reviewing court must determine the relative harm caused by the errors." *Id.* at 927-28. If the evidence of guilt is overwhelming, the errors may well be considered harmless, while trial errors are more likely to be prejudicial if the state's case is weak on a critical element. *Id*. at 928.

Because the prosecutor made multiple improper statements that must be considered cumulatively to determine if Sechrest was prejudiced by these errors, we summarize all of the prosecutorial misconduct. First, the prosecutor made improper statements by aligning himself with the jury (*Leavitt v. Arave*, 383 F.3d 809, 834 (9th Cir. 2004)), emphasizing his position (*United States v. Young*, 470 U.S. 1, 18-19 (1985)), and expressing his opinion of Sechrest's guilt (*United States v. McKoy*, 771 F.2d 1207, 1210-11 (9th Cir. 1985)). Second, the prosecutor's statements about Sechrest's private sex life, for which the prosecutor hypothesized, but offered no evidence of, a connection to the charged crimes, may have been improper. The statements in which he disparaged Sechrest's boyfriend Danny Sportsman, and by implication Sechrest, based on his sexuality, certainly were. *United States v. Weatherspoon*, 410 F.3d 1142, 1149 (9th Cir. 2005) ("We have consistently cautioned against prosecutorial statements designed to appeal to the passions, fears and vulnerabilities of the jury."). Third, the statements in which the prosecutor called on the jurors to imagine the state of mind of the victims were also

5

improper. *Fields v. Woodford*, 309 F.3d 1095, 1109, *amended*, 315 F.3d 1062 (9th Cir. 2002) (holding it improper for the prosecutor to "describe[] the crimes . . . from [the victim's] perspective"). Fourth, the prosecutor's misstatement of the reasonable doubt standard was likely improper. *Randolph v. State*, 117 Nev. 970, 982 (2001) (en banc) ("Any prosecutor reasonably knows that a 'gut feeling' of guilt is not certainty beyond a reasonable doubt and that such an assertion should never be made to a jury."). Finally, fifth, the prosecutor's requests that the jury use its verdict to send a message to the community were entirely improper. *Weatherspoon*, 410 F.3d at 1149 ("A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking.") (internal quotation marks omitted).

However, the prosecutor's improper statements must be considered alongside the evidence of Sechrest's guilt. *Hall*, 935 F.2d at 165-66. The strongest evidence against Sechrest was his tape-recorded, voluntary confession to the police that he killed Maggie Schindler and Carly Villa.

Sechrest told the police that he picked the girls up from the mall and drove them to Lagomarsino Canyon to go rock hunting. Sechrest said that Carly fell backward while hiking and hit her head. Sechrest explained that he believed Carly was dead and that Maggie began to "freak out" and was "between hysterical and

6

crying." Sechrest said that he knew it was wrong to be at the canyon with the girls; that he was afraid that Maggie would tell her mother what had happened to Carly and "everything that was going on"; and that he was concerned that he would be blamed. He "ha[d] to shut her up," because he was on probation and might get in trouble, and therefore caught her and "hit her in the back of the head with [a rock]." Sechrest explained that Maggie fell and he continued to hit her. When he saw that Maggie was not dead, he "hit her again and again." He stated that, at that point, he intended to kill Maggie "[t]o cover up" what had happened to Carly.

Then Sechrest said he went to his car to get a shovel to bury the girls. When Sechrest returned to where Carly lay, he saw that she had moved. He explained that he "figured [Carly] must not be dead" and so decided "since I'd already done it to Maggie, I had to finish everything" so that there would be "nobody left to get me in trouble." He therefore hit her on the head with the shovel.

Sechrest then discovered that Maggie had also moved and he said that he might have hit her with the shovel as well. Sechrest said that after killing Maggie he attempted to have sexual intercourse with her, but when that failed he masturbated and ejaculated on her stomach.

Thus, according to Sechrest's voluntary confession, which the jury heard

7

and of which it received a transcript, he thought about his reasons for killing the girls, understood the consequences of his actions, and took actions consistent with ending the girls' lives even after having more time to think about his actions when he returned from the car with the shovel. Sechrest thus admitted to having committed willful, premeditated, deliberate first degree murders.

Nor was there reason to doubt the truth of Sechrest's confession that he killed the girls, as there was also additional evidence of Sechrest's guilt, corroborating his confession. A nine-year-old girl identified Sechrest as the man she saw at the mall the day Maggie and Carly were kidnaped and whom Maggie described as her babysitter. The doctor who performed the autopsies testified that in his opinion Maggie and Carly both died from blunt force trauma to the head and that it was highly unlikely that Carly could have fallen and killed herself, indicating that, even if Sechrest's story about Carly initially falling down was true, she was not dead until Sechrest returned and struck her with the shovel. A technician with the Washoe County Crime Laboratory testified that one of the shovels found at Sechrest's home had human blood on it. Sportsman testified that Sechrest sometimes kept that shovel in his car, and that Sechrest washed his clothes the afternoon of the murders, an act which, Sportsman testified, was highly unusual. Sportsman explained that after Maggie and Carly's disappearance,

Sechrest changed his appearance by cutting his hair and shaving, and that, with Sportsman's help, Sechrest cleaned and then sold his car. Sportsman also testified that on June 13 or 14, 1983, Sechrest told him that he "might have had something to do with" the disappearance of the girls.

Here, because the evidence of Sechrest's guilt, including his premeditation, deliberation, and intent to kill the girls, was so strong, the prosecutor's improper statements during his opening and closing argument, considered cumulatively, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (internal quotation marks omitted).[2]

Sechrest argues that the prosecutor's misconduct in this case warrants relief even if the jury's verdict was not impacted, citing *Brecht*, 507 U.S. at 638 n.9. A

---

[2] The judge instructed the jury that it could convict Sechrest of first degree murder under a theory of premeditation and deliberation or under a felony-murder theory. The jury returned a general guilty verdict which did not specify under which theory the jury found Sechrest guilty. Sechrest argues that the evidence supporting a first degree felony-murder conviction was not particularly strong as to whether Sechrest intended to murder or sexually abuse the girls when he kidnaped them. Thus, he argues, he was prejudiced by the prosecutorial misconduct under *Brecht* as to the felony-murder theory. Whatever the strength of the felony murder theory, we cannot conclude that the prosecutorial misconduct likely had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 637 (internal quotation marks omitted), because one of the theories under which the jury could convict, namely premeditation, was supported by overwhelming evidence. *Cf. Hedgpeth v. Pulido*, 555 U.S. 57, 61-62 (2008) (holding that the *Brecht* harmless-error analysis applies "in the context of a jury instructed on multiple theories of guilt, one of which is [legally] improper").

petitioner is not entitled to relief under *Brecht*'s footnote nine rule unless the "integrity of the proceeding was so infected that the entire trial was unfair." *Hardnett v. Marshall,* 25 F.3d 875, 879 (9th Cir. 1994); *see also Phillips v. Woodford*, 267 F.3d 966, 986 n.14 (9th Cir. 2001). This is not such a case. Although the prosecutor's conduct during his opening and closing statements was in several respects reprehensible, it did not affect the trial's integrity to the degree that the entire trial was unfair.

**AFFIRMED**.