**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-50555 |
| Plaintiff - Appellee, | D.C. No. 2:08-cr-00713-DSF-58 |
| v. | |
| RICARDO RUBIO-GARCIA, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted January 8, 2016
Pasadena, California

Before: WATFORD and FRIEDLAND, Circuit Judges, and MOTZ,[**] Senior
District Judge.

**1.** Sufficient evidence supports Ricardo Rubio-Garcia's conviction for

possession of cocaine with intent to distribute. Viewed in the light most favorable

to the government, *see United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010)

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**] The Honorable J. Frederick Motz, Senior District Judge for the U.S.
District Court for the District of Maryland, sitting by designation.

(en banc), the evidence showed that Rubio gave directions to a Mexican drug supplier that were to be relayed to a drug courier. Rubio then met the courier at a prearranged location, briefly spoke with him, and got in the passenger seat of the courier's vehicle. Rubio directed the courier—whose vehicle was transporting ten kilograms of cocaine hidden away in secret compartments—to a stash house where the drugs could be removed. The jury also heard expert testimony that drug trafficking organizations typically do not entrust individuals unfamiliar with the details of the criminal enterprise with the location of a stash house, given the high value of the narcotics stored there. A reasonable jury could infer from this evidence "that [Rubio] associated with the criminal venture, participated in it, and sought, by his actions, to make it a success." *United States v. Boykin*, 785 F.3d 1352, 1359 (9th Cir. 2015). No more was required to convict Rubio under an aiding-and-abetting theory, for which the government argued and on which the jury was instructed. *See id.*

**2.** Sufficient evidence supports Rubio's conspiracy conviction as well. The above-narrated evidence amply demonstrated that Rubio agreed with at least the supplier and the courier to participate in a drug deal and that he intended to aid in its accomplishment. *See United States v. Iriarte-Ortega*, 113 F.3d 1022, 1024 (9th Cir. 1997). The evidence also showed that the vehicle Rubio was directing drove

in a pattern consistent with counter-surveillance activities, which "qualify as acts in furtherance of a conspiracy." *United States v. Penagos*, 823 F.2d 346, 348 (9th Cir. 1987).

It is immaterial whether the evidence showed that Rubio was aware of the entirety of the broader drug conspiracy charged in the indictment. There was no constructive amendment, since the proof at trial was narrower than the charges in the indictment. *See United States v. Wilbur*, 674 F.3d 1160, 1178 (9th Cir. 2012). And any variance from the charged conspiracy was not prejudicial. *See United States v. Morse*, 785 F.2d 771, 775 (9th Cir. 1986). First, this was not a case in which the evidence suggested the existence of two temporally separate conspiracies, which might cast doubt on the jury's unanimity. *See United States v. Echeverry*, 698 F.2d 375, 377 (9th Cir. 1983) (per curiam). Second, as even Rubio concedes, the defense was not unprepared for the evidence at trial. And third, any risk of prejudicial spillover from evidence irrelevant to the narrower conspiracy was slight. Unlike in *Kotteakos v. United States*, 328 U.S. 750 (1946), Rubio was tried alone, and the jury was not instructed on transference of guilt among co-conspirators. *See United States v. Duran*, 189 F.3d 1071, 1082–83 (9th Cir. 1999).

**3.** The district court did not plainly err in admitting improper opinion testimony. The case agent in charge of the investigation into the broader drug

conspiracy testified as to his interpretation of various intercepted phone calls involving the supplier, the courier, Rubio, and others; he also testified regarding his perceptions of Rubio's activities on the day of the drug deal. That he reviewed translations of the intercepted conversations and did not listen to the calls in real time does not mean that his testimony lacked proper foundation. He relied on his ample "knowledge and investigation in this case" in forming his opinions, which is all that is required in this context. *See United States v. Torralba-Mendia*, 784 F.3d 652, 660–61 (9th Cir. 2015). In addition, the vast majority of the case agent's opinion testimony was helpful to the jury and not based on expert knowledge. *See id.*

However, not all of the case agent's testimony was properly admitted. The case agent explained the meaning of a few words and phrases that were well within the common understanding of the jurors, and thus not helpful under Federal Rule of Evidence 701. *See United States v. Freeman*, 498 F.3d 893, 905 (9th Cir. 2007). He also initially based his opinion that Rubio was directing the load vehicle to a stash house on his "training and experience," and he provided some testimony on what is "typical" of drug deals. Each of these opinions fell outside the bounds of proper lay opinion. *See* Fed. R. Evid. 701, 702; *Torralba-Mendia*, 784 F.3d at 660.

But Rubio cannot show that any of these errors violated his substantial rights. The case agent's testimony about what drug deals typically entail merely duplicated what the government's expert had already said, so any impact the error had on the jury was limited. *See United States v. Vera*, 770 F.3d 1232, 1240 (9th Cir. 2014). And the government corrected the case agent's improper testimony about Rubio's role in the car immediately after it was introduced. Defense counsel objected on foundation grounds, which led the prosecution to elicit testimony about Rubio's role in the load vehicle that was clearly based on the case agent's personal work on the case.

**4.** The district court's failure to instruct the jury on the distinction between the case agent's lay testimony and his expert testimony did not rise to the level of plain error. *See Torralba-Mendia*, 784 F.3d at 658–59. The case agent was not qualified as an expert and, as explained above, nearly all of his testimony was well within the bounds of proper lay opinion testimony. Any possible confusion and prejudice were therefore limited, since the jury was not aware of the case agent's dual roles. *See Vera*, 770 F.3d at 1242.

**5.** The district court did not plainly err in admitting expert testimony about the structure of drug organizations. Rubio was charged with conspiracy to distribute and possess cocaine. The expert testimony in question was relevant to

the jury's determination of whether a conspiracy existed and whether Rubio knowingly participated in it. *See Torralba-Mendia*, 784 F.3d at 662–63; *United States v. Valencia-Amezcua*, 278 F.3d 901, 908–09 (9th Cir. 2002).

**6.** The government's introduction of expert testimony that drug trafficking organizations do not use so-called "blind mules" does not necessitate reversal. Whether or not some drug cartels do in fact use couriers who are unaware that they are transporting drugs is irrelevant in this case, since Rubio was not a drug courier.[1] Viewed in the light most favorable to the government, the evidence showed that Rubio knew the location of the stash house, which the jury was told is a crucial and highly guarded piece of information within drug conspiracies. Rubio has come forward with nothing to impugn the veracity of the expert's testimony that drug organizations typically do not entrust individuals unfamiliar with the details of the criminal enterprise with the location of their stash houses. He thus cannot satisfy the requirements of plain error review. *See United States v. Sanchez*, 659 F.3d 1252, 1257 (9th Cir. 2011).

---

[1] Per Rubio's unopposed request, this court takes judicial notice of the complaint in *United States v. Chavez*, Case No. 11-3330-G (W.D. Tex. 2011), in which the United States charged a defendant with conspiring with a drug trafficking organization (separate from the one at issue here) that made widespread use of blind mules.

**7.** The prosecution's misconduct in questioning the sole defense witness does not provide a basis for reversal. All of the calls about which the witness testified were admitted into evidence, which allowed the jury to independently evaluate the voices at issue. And even Rubio acknowledges that the witness—whose voice-identification testimony was riddled with errors—"did not offer the most compelling testimony on [his] behalf."

**8.** Reversal is not required on account of cumulative error. *See Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007). The few errors at trial fall short of fatally undermining the government's case, as the evidence more than sufficed to demonstrate Rubio's guilt on both counts.

**AFFIRMED.**

FRIEDLAND, Circuit Judge, dissenting:

Multiple evidentiary errors and instances of prosecutorial misconduct marred Rubio's trial. Because I believe that the cumulative effect of these mistakes rendered the verdicts entirely unreliable, I would reverse both convictions and remand for a new trial.[1]

First, in my view, there can be no question that the conspiracy the Government sought to prove at trial varied from that with which Rubio was charged. The Grand Jury in this case returned an indictment charging thirty co-defendants, including Rubio, with participating in a single, wide-ranging conspiracy run by the Sendis-Ramirez organization to traffic cocaine and other narcotics from Mexico into the United States spanning the period from May 2007 through November 2012. But because the district court failed to read or describe the indictment, and instead only informed the jury that Rubio was charged with conspiring to distribute cocaine, the jury was not "fairly apprised of the nature of [this] charge[]." *Robles v. United States*, 279 F.2d 401, 403-04 (9th Cir. 1960).

---

[1] Although I believe the errors at trial should require us to reverse the convictions, I would hold that sufficient evidence was presented to permit a retrial. *Cf. United States v. Bibbero*, 749 F.2d 581, 586 (9th Cir. 1984) (explaining that the Double Jeopardy Clause precludes retrial when a conviction is reversed for insufficient evidence).

1

Likewise, in a departure from our model jury instruction, *see* Ninth Cir. Model Crim. Jury Instruction 9.19 (2015), the district court's instruction on the conspiracy charge did not state the timeframe of the alleged conspiracy but instead allowed the jury to convict Rubio if it found that he joined *any* agreement between two or more persons to distribute cocaine. Given that the argument and evidence at trial focused almost entirely on the single transaction in which Rubio was allegedly involved, it seems clear that the jury convicted Rubio of a much narrower conspiracy than that charged—one limited to an agreement among perhaps four people to distribute a single load of cocaine on a single occasion. *See United States v. Wilbur*, 674 F.3d 1160, 1178 (9th Cir. 2012) (providing that a variance occurs when "the evidence offered at trial proves facts materially different from those alleged in the indictment" (quoting *United States v. Hartz*, 458 F.3d 1011, 1020 (9th Cir. 2006))).

The majority finds that no prejudice attached to this variance. I disagree. The defense came to trial prepared to convince the jury that "the government never connected [Rubio] to the larger Sendis Ramirez organization." This strategy was rendered irrelevant by the variance because it was not responsive to the theory that Rubio conspired to carry out the single transaction. Further, the confusion about the scope of the conspiracy at issue permitted evidence about the Sendis-Ramirez organization and drug deals in which Rubio had no alleged involvement to spill

2

into his trial.  Once admitted without even a limiting instruction, this largely irrelevant evidence created a danger that the jury would unfairly impute to Rubio guilt attributable to members of the Sendis-Ramirez organization.

As the majority concedes, this was not the only flaw in Rubio's trial.  There also was the admission of improper lay and putative expert testimony by the case agent without a dual-role instruction, which created the risk that the jury would give the officer's lay opinions unmerited credibility.  *See United States v. Freeman*, 498 F.3d 893, 903-04 (9th Cir. 2007).  And there was the undisputed prosecutorial misconduct during cross-examination of the sole defense witness— when the prosecutor was permitted, over defense objections, to repeatedly invoke hearsay conversations with other prosecutors to impeach the witness's résumé.

Even more problematically, there was the admission of false testimony by the Government's "drug expert," that drug trafficking organizations do not use unknowing couriers, or "blind mules," despite this court's repeated admonition against such testimony's introduction.  *See United States v. Flores*, 510 F. App'x 594, 595 (9th Cir. 2013) (unpublished); *United States v. Venagas-Reynoso*, 524 F. App'x 373, 377 (9th Cir. 2013) (unpublished).  The use of knowingly false testimony to obtain a criminal conviction contravenes due process and can be cause for reversal.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *see United States v. Houston*, 648 F.3d 806, 814 (9th Cir. 2011).

3

The majority contends that the introduction of the blind mule testimony was not material to Rubio's conviction because Rubio was not himself a drug courier. Respectfully, I believe the majority misapprehends the way the Government used the testimony at trial. The Government elicited the testimony to support the inference that drug trafficking organizations never employ unknowing participants in their transactions and thereby to undercut Rubio's theory of defense that he was an unwitting participant in the drug deal at issue. Indeed, the prosecution explicitly asked the jury to draw this very inference during its closing remarks when it told them that Rubio's defense was directly contradicted by the special agent's expert testimony that drug trafficking organizations do not use individuals "who [do not] know that a drug deal is going on." The Government's evidence and argument that drug organizations do not use unwitting persons in their drug deals went directly to Rubio's mental state and therefore to an essential element of the crimes charged. There can be little confidence in a verdict obtained in this manner. *See Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc) (explaining that the materiality standard contemplates "not whether the defendant would more likely than not have received a different verdict . . . , but whether . . . he received a fair trial, understood

4

as a trial resulting in a verdict worthy of confidence" (quoting *Hall v. Dir. of Corr.*, 343 F.3d 976, 983-84 (9th Cir. 2003) (per curiam))).[2]

Together these errors unfairly prejudiced Rubio by "render[ing] [his] defense 'far less persuasive than it might have been.'" *Parle v. Runnels*, 505 F.3d 922, 934 (9th Cir. 2007) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973)); *see United States v. Wallace*, 848 F.2d 1464, 1476 n.21 (9th Cir. 1988) (determining that error not objected to at trial may be aggregated together with preserved errors in cumulative error analysis). The deleterious effect of cumulative error is particularly severe here given the weakness of the Government's case, which was built on Rubio's participation in a single phone call in which no mention of drugs was made and the short period of time he spent in the passenger seat of the load car. *See United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996) ("[W]here the government's case is weak, a defendant is more likely to be prejudiced by the effect of cumulative errors."). Because I have no

---

[2] I also reject the Government's specious argument that the testimony was not actually false because the case agent premised the statements as being based on his personal experience. As the jury was repeatedly told, the case agent testified as an expert on drug trafficking, not based on his percipient observations. Further, the implication of the Government's argument is that the prosecution could overcome *Napue* in almost every case by asking an expert to qualify false testimony as being based on his or her experience. I decline to endorse an outcome that would create such an end run around the *Napue* bar. Testimony that is "so misleading as to amount to falsity," *United States v. Vozzella*, 124 F.3d 389, 390 (2d Cir. 1997), deserves no place in a criminal trial.

5

confidence in the process through which the jury reached its verdicts, I would

reverse to permit Rubio to confront the Government's case on a fair playing field.